MARY WHALEN *vs.* CLARENCE M. DUNBAR *et al.*

JANUARY 18, 1922.

PRESENT: Sweetland, C. J., Vincent, and Rathbun, JJ.

*(1)   Automobiles.   Negligence.   New Trial.   Evidence Opposed to Facts.*

Where the driver of an automobile in which plaintiff was a passenger, was confronted with an emergency involving a rear end collision, and turned to the left and while proceeding diagonally across the road collided with defendant's automobile coming toward him, testimony of plaintiff's witnesses that after the driver turned to the left defendant's automobile ran several hundred feet and that four or five seconds elapsed before the collision, cannot be given weight where it appears that at the time of the collision one of the forward wheels of the car in which plaintiff was riding was about on a line with the rear wheels of the front automobile and the rear end of the car was still behind the forward automobile, for where testimony is opposed to established physical facts it must yield to such facts.

*(2)   Automobiles.   Negligence.   Rate of Speed.   New Trial.*

Where the speed of defendant's automobile in no wise contributed to the accident, the rate of speed is immaterial and liability of defendant cannot be predicated upon the speed of his car.

TRESPASS ON THE CASE for personal injury. Heard on exceptions of defendant and sustained.

RATHBUN, J.   This is an action of trespass on the case for negligence brought to recover for personal injuries suffered by the plaintiff and caused by a collision between an automobile in which she was riding as a passenger and another automobile owned by the defendant and operated by his chauffeur. The trial in the Superior Court resulted in a verdict for the plaintiff for $1,500. The case is before this court on the defendant's exception to the ruling of the trial court refusing to direct a verdict for the defendant.

The collision occurred a short distance south of "Dago Switch" in the town of Warwick near the village of Norwood on the State highway leading from Apponaug to Providence. Said highway runs in a northerly and southerly course and has a macadam surface eighteen feet in width. A street car track is located on the extreme westerly side of the highway. The plaintiff and four gentlemen were passengers in a Ford touring car owned and operated by William Brown. While

said touring car was proceeding on the right hand side of the macadam surface of said highway in a northerly direction and following another Ford automobile the speed of the front automobile was suddenly reduced. To avoid running against the rear end of the front automobile Brown turned his automobile to the left and when one of the front wheels of his automobile was about on a line with the rear wheels of the front automobile Brown's automobile collided with the defendant's automobile, which was being driven in a southerly direction. Witnesses for the plaintiff gave various estimates as to the speed at which defendant's automobile was running at the time the automobile in which the plaintiff was riding turned to the left. Some of her witnesses estimated the speed of defendant's automobile to be from fifty-five to sixty miles per hour. The highest estimate given by the defendant's witnesses was twenty-five miles per hour. The defendant's counsel admit that Brown was not the servant of the plaintiff; that she had no control over him and that contributory negligence can not be attributed to the plaintiff.

The plaintiff contends that it was the province of the jury to decide whether the defendant's automobile was proceeding at an unreasonable rate of speed and whether his chauffeur had the last clear chance to avoid the accident, and that the trial court did not err in submitting the case to the jury upon these issues.

John W. Holland, one of the passengers in Brown's automobile and a witness called by the plaintiff, testified as follows: "When he came out he had practically got out half of his machine, but not quite, on the other side." . . . "I didn't know what was the matter. Q. When you turned out how far did you turn out? A. We were at an angle when we were struck. Q. At an angle turning out when you were struck? A. Yes, sir." . . . "Q. But your car was still practically upon the right side of the highway? A. Not quite. It hadn't quite got out. It was at an angle. Q. Had it got up to the car ahead?"

A. The front wheels of our car was about on a line with the rear wheels of the car which was almost stopped. Q. At the time you were struck? A. Yes, sir. Q. And the rear of your car was still back upon your right hand side of the road? A. Practically it was." . . . "Q. As you pulled to the left from behind that car weren't you struck on the right hand side of your machine? A. I couldn't say because it came so quick. I really couldn't say. Q. It was right there when you pulled out? A. Well, not exactly when we pulled out, no sir, we pulled out gradually. Q. It was there before you got out? A. Yes, sir."

Owen Joseph Donnelly, a passenger in Brown's automobile and a witness called by the plaintiff, testified as follows: "Q. You say that Mr. Brown turned out? A. Yes, sir. Q. Which way had he turned out? A. To the left, yes, sir. Q. Had the turn that he made been completed when the collision occurred? A. No, sir, it was not. Q. Then the turn was not completed when the accident occurred? A. No, sir, it wasn't. Q. You was just pulling out at that time? A. Yes, sir, you are right. Q. You never turned way out? A. No, sir; we were on an angle. The collision came. Q. Almost instantly? A. Yes, sir, almost, in about a second."

Frank Stephenson, a passenger in Brown's automobile and a witness called by the plaintiff, testified as follows: "Q. While you were turning out you were struck? A. Just as— we were not quite straight. When we were struck we were not quite straight. We were on the turn. Q. You were on the turn in the process of turning out? A. Process of turning out. Q. Weren't you turning out when you were struck? A. Yes, sir." . . . "Q. When he said, 'almost instantly,' you said 'almost,' did you not? A. Yes, sir, I will say it was almost. Q. In about a second? A. No, sir, not a second." . . . "Q. How long did they continue to run along after he began to make the turn before the collision? A. A couple of seconds, I guess. This all happened so quick. Q. A couple of seconds? A. Yes, sir."

Leo G. Roy, a witness called by the plaintiff, testified as follows: "Q. Will you tell us further as to what. the Ford machine did after that, if you recollect? A. Well, after that— Q. Before it was struck. A. I saw it swerve and it seemed to me as though it never gone any further. I don't know whether it was trying to get back but it got struck about the same place he swerved. out." . . . "A. The rear Ford wheel, the front Ford wheel of the rear Ford was about even with the back wheel of the forward Ford machine."

Tony Giardano, a witness called by the plaintiff, testified as follows: "Q. Just as he pulled out they were struck? A. Yes, sir."

The plaintiff testified as follows: "Q. When you were struck he was pulling to the left? A. Yes, sir, I think he was. Q. The machine hadn't got out into the road at the time you were struck? A. No, it hadn't."

Some of the plaintiff's witnesses testified that four or five seconds elapsed between the time when the automobile in which the plaintiff was riding commenced to turn to the left and the time when the collision occurred; also that the defendant's automobile was five hundred or six hundred feet away when the automobile in which the plaintiff was a passenger commenced to turn to the left. Does testimony of such a character, in view of the physical facts presented and other contradictory testimony by the same witnesses, entitle the plaintiff to go to the jury on the question of the last clear chance of the defendant's chauffeur to avoid the accident? The plaintiff's witnesses testified that the defendant's chauffeur was driving on the right hand side of the macadam surface and that he turned further to the right before the collision occurred. All of the witnesses agree (and the truth of their testimony is established by the photographs of the damaged automobiles) that the left hand front wheel and mudguard of the defendant's automobile collided with the right hand forward wheel and mudguard of the automobile in which the plaintiff was riding. The

defendant's chauffeur testified relative to statements made immediately after the collision by Brown, the driver of the automobile in which the plaintiff was a passenger, as follows: "He said he did not blame the least bit; that he had three things to do, either go to the right or have a rear end collision and not seeing me coming he swung out to the left." Brown was available as a witness but the plaintiff did not call him to contradict the statements attributed to him or for any other purpose.

From all the testimony it is clear that Brown was confronted with an emergency when the automobile which he was following slackened its speed. To avoid a collision with the rear end of the forward automobile he turned to the left. His escape from a danger which he saw brought him into a peril which, according to the testimony, he failed to observe. The testimony of both the plaintiff's and the defendant's witnesses is to the effect that Brown to avoid the automobile in front of him turned to the left and collided with the defendant's automobile while Brown's automobile was proceeding diagonally across the road. When the collision occurred one of the forward wheels of Brown's automobile was about upon a line with the rear wheels of the front automobile and the rear end of Brown's automobile was still behind the forward automobile. In view of the above facts it is idle to contend that the defendant's automobile, after Brown turned to the left, ran several hundred feet or that four or five seconds, or any appreciable time, elapsed before the collision occurred. When Brown's automobile was running diagonally across the road it could not at the same time be moving sidewise in a northerly direction and yet such conduct would be necessary to account for Brown's automobile keeping pace with the forward automobile.

When testimony is opposed to established physical facts the testimony must yield to such facts. In *Dodds* v. *Omaha & C. B. St. R. Co.*, 178 N. W. (Neb.) 258, the court said: "The rule that a verdict will not be disturbed when there is evidence tending to support it does not apply where the

verdict is opposed to the undisputed physical facts in the case, or is in flat contradiction of recognized physical laws, and where the testimony presented, taken as a whole, is capable of no reasonable inference of such a state of facts as would allow the plaintiff to recover." In *Gorman* v. *Hand Brewing Company*, 28 R. I. 180, this court quoted with approval from the case of *Anderson* v. *Liljengren*, 50 Minn. 3, as follows: " 'The rule undoubtedly is that, where the positive testimony of a witness is uncontradicted and unimpeached, either by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic, it can not be disregarded, but must control the decision of the court or jury. But a witness may be contradicted by the facts he states as completely as by direct adverse testimony. A court or jury is not bound to accept it as true merely because there is no direct testimony contradicting it, where it contains inherent improbabilities or contradictions, which alone, or in connection with other circumstances in evidence satisfy them of its falsity.' "

There is no testimony in the case of any probative value upon which can be based a finding that the defendant's chauffeur could have avoided the accident after he saw or should have seen the predicament in which Brown's automobile was placed.

The remaining question is whether the defendant's chauffeur was driving at a negligent rate of speed and if so whether such speed contributed to the accident.

All of the testimony of any probative value relative to this question is to the effect, and the physical facts demonstrate, that the collision occurred while Brown's automobile was proceeding diagonally across the road and when the front of his automobile must have been near the westerly side of the macadam surface and that the collision occurred almost immediately after Brown turned to the left. There was no danger whatever, regardless of the speed of the defendant's automobile, until Brown suddenly drove his automobile across the road in front of the defendant's

automobile at such close proximity to it that the collision was inevitable. If it should be conceded that the defendant's automobile at the time the emergency was created was proceeding at a rate of speed in excess of the statutory limit there was no testimony of probative value showing or tending to show that the accident would not have happened if the defendant's automobile had been proceeding at the rate of twenty-five miles per hour or even at a much less rate of speed, or that the speed of the defendant's automobile in any way entered into the cause of the collision. As the speed of the defendant's automobile in no wise contributed to the accident the rate of speed is immaterial and liability can not be predicated upon the speed of said automobile. *Burlie* v. *Stephens*, 193 Pac. (Wash.) 684; *Cross* v. *Rosencranz*, 195 Pac. (Kan.) 857.

We think that the trial court should have granted the defendant's motion for direction of a verdict in his behalf. The defendant's exception is sustained. The plaintiff may appear before this court, if she shall see fit, on Monday January 23, 1922, at ten o'clock a. m., and show cause why an order should not be made remitting the case to the Superior Court with direction to enter judgment for the defendant.

*Baker, Spicer & Letts*, for plaintiff. *Ira Lloyd Letts, James I. Shepard*, of counsel.

*Waterman & Greenlaw*, for defendant. *Lewis A. Waterman, Ralph M. Greenlaw, Charles E. Tilley*, of counsel.