376 A.2d 1359

Virginia D. Markham *et al. vs.*
Cross Transportation, Inc. *et al.*

AUGUST 18, 1977

Present: Bevilacqua, C.J., Paolino, Joslin and Doris, JJ.

Doris, J. This case comes to us on appeal from judgments entered after jury verdicts in Superior Court awarded damages to the plaintiffs, Virginia D. Markham, and her husband, Robert W. Markham, Jr., for negligence on the part of the defendant, Thomas Barry,[1] Terry L. Miller, and Penn Transportation Corp.

The record indicates that this case arose out of a motor vehicle accident which occurred on the night of February 3, 1970, on Interstate Route 95, southbound, just south of the exit 16 ramp leading to Route 10. There was a considerable amount of conflicting testimony given by the various parties in this multi-vehicle accident, and very little agreement as

---

[1]Thomas Barry died during the pendency of this suit, and Zurich Insurance Company was then added as a defendant because of its contract of indemnity insurance with Barry. No appeal has been filed on behalf of Barry or Zurich, and we therefore need not address any questions raised at trial as to the propriety of proceeding directly against an insurer under G.L. 1956 (1968 Reenactment) §27-7-2 when the insured dies while suit is pending against him. We note, however, that the defendant William G. Carpenter, who was not found to be liable, also died while this action was pending. Allstate Insurance Company was substituted for him as a party defendant under §27-7-2, and we have already denied Allstate's petition for certiorari disputing this substitution. *Markham v. Allstate Ins. Co.*, 116 R.I. 152, 352 A.2d 651 (1976).

to the facts. However, a careful reading of the transcript enables us to get an overview of the sequence of events leading to the several collisions.

At 10 p.m. on February 3, 1970, when the accident occurred, the visibility was poor due to hard rain and strong winds. North of exit 16, Route 95 had four southbound lanes and a breakdown lane on the right, but just south of exit 16 the road was reduced to three traffic lanes and a breakdown lane. All the vehicles involved in the accident were traveling south on Route 95, and all drivers claimed to be going between 40 and 50 miles per hour, well within the posted maximum speed limit.

Thomas Barry was driving a red Oldsmobile which went out of control and was moving erratically, swaying between the breakdown land and the center of the highway. He was hit broadside by a panel truck driven by defendant, Richard Serra, who also hit (or was hit by) a blue station wagon driven by defendant, Dr. Salvatore Azzoli. Doctor Azzoli may also have collided with the car driven by Barry. Serra came to rest near the left side of the road, Barry near the middle, and Azzoli near the right side. The next vehicle on the scene was driven by plaintiff, Mrs. Virginia D. Markham, who testified that she slowed down and stopped in the center lane without hitting any of the other cars.

The last two vehicles on the scene were two tractor trailers. The first, owned by defendant Cross Transportation, Inc. was driven by defendant William G. Carpenter, and the second, owned by defendant Penn Transportation Corp., was driven by defendant Terry Miller. Carpenter testified that he jammed on his brakes, pulled to the right and might have struck something before coming to rest on the right side of the road. Miller testified that he could not stop in time, but slowed considerably before striking the Serra truck and the Barry Oldsmobile. He testified that he tried to fit between the two vehicles, but because there was not enough room, he hit them and then came to a stop about

50 feet beyond the Serra truck in the left lane.

Mrs. Markham testified that she was struck from behind by a tractor trailer truck and that she was rendered unconscious. However, she also testified that before losing consciousness, she saw what she believed was the same tractor trailer hit the Serra truck, throwing Mr. Serra and his dog out through the driver's door and onto the pavement. Miller's testimony was in direct conflict with this; he claimed that he hit only the Serra and Barry vehicles, and never even saw Mrs. Markham's car until he got out of his truck after all the vehicles were stopped. Carpenter's testimony was less clear; he thought he hit something, but was unsure as to what (or who) it might have been.

Mrs. Markham sustained serious injuries for which she has received continuing medical treatment, including an operation, since the time of the accident. She was also forced to give up her job with the Baptist State Convention, and at the present time she is only able to work part-time. Her physicians testified that her neck movement is now only 75% of "normal", that it is unlikely to improve, and in fact may worsen in the future. They think it unlikely that she will ever be able to work full-time again.

Mr. and Mrs. Markham brought suit against all defendants on October 15, 1971. Before the trial took place, Thomas Barry and William G. Carpenter had died from causes not related in any way to the accident, and Zurich Insurance Company and Allstate Insurance Company were substituted as party defendants for Barry and Carpenter, respectively. See note 1, *supra.* Also, cross-claims were made by Cross Transportation, Inc. and Allstate Insurance Company (in place of Carpenter), against all defendants for contribution.

The trial finally began before a jury in Superior Court on October 5, 1976, and lasted until October 21, 1976, when the jury returned its verdicts. The verdicts were recorded on

a list of interrogatories prepared by the trial justice and given to the jury to assist in their deliberations in accordance with Super. R. Civ. P. 49. They found that plaintiff, Virginia D. Markham, was not guilty of any contributory negligence; that defendants Dr. Salvatore Azzoli, Richard Serra and his wife, Lillian Serra, Cross Transportation, Inc., its operator, William G. Carpenter, and the insurance carrier, Allstate Insurance Company were all not guilty of negligence as to Mrs. Markham; and that defendants Thomas Barry, his insurance carrier, Zurich Insurance Company, and Penn Transportation Corp. and its driver, Terry Miller were guilty of negligence as to Mrs. Markham. They awarded damages of $105,000 to Virginia D. Markham, and $15,000 to her husband, Robert W. Markham, Jr., for property damage to his car and consequentials as her husband. The defendants, Penn Transportation Corp. and Terry Miller, have appealed from the judgments entered on these verdicts, claiming numerous errors on the part of the trial justice, including certain evidentiary rulings, refusal to give certain requested instructions to the jury, denial of a motion for directed verdict, and denial of a motion for a new trial.

The defendants raise four evidentiary rulings of the trial justice which they claim were erroneous and prejudicial to their defense. The first of these concerned the use of a prior deposition to impeach the testimony of Mrs. Markham.

The defendants claim that the two questions in the deposition which the trial justice did not allow them to use would have been additional impeachment of Mrs. Markham's testimony and would have shown conclusively that she was unconscious immediately after impact and, therefore, could not have seen the trailer-truck hit Serra's truck as she claimed at trial. We agree with the trial justice's ruling that there was no inconsistency between these two deposition questions and answers and Mrs. Markham's testimony. However, even if they were inconsistent, the

trial justice allowed two very similar deposition questions to be used for purposes of impeachment,[2] and any error resulting from the two that were excluded was not prejudicial since Mrs. Markham was fully cross-examined on the incident, and anything further would merely have been cumulative.

We also agree with the trial justice's decision not to admit a written statement which was made by defendant Miller several years prior to the trial. A portion of it was the subject of cross-examination by a codefendant when Miller was called as an adverse witness in order to show a prior inconsistent statement. The trial justice refused to admit the entire statement as an exhibit because it did not stand in its original state. The defendants argue that it should have gone in under "the rule of completeness." The "rule" allows the remainder of a statement, partially introduced, to be put in if it explains an alleged inconsistency. However, it does not totally overshadow other rules of evidence. The trial justice obviously felt that the statement, underlined and marked for emphasis, should not be given to the jury.

---

[2]The following two questions were allowed:

"147  Q  At the time you checked your rear-view mirror other than the two lights that you saw did you see anything else?
  A  No.

"148  Q  And what happened next after the impact?
  A  I can't really tell you because the next thing I remember my car was up against the curb of the median strip. My front wheels were touching it, and I had come to a halt. And I can't tell you what length of time it was between the impact and the time I realized where I was."

The following two questions were disallowed.

"161  Q  As far as you know the only thing that you saw with reference to any vehicle or vehicles that might have been behind you was just two headlights; is that correct?
  A  Yes.

"162  Q  Now, what did you do when your vehicle came to rest?
  A  I don't know what the time interval was between the time it came to rest and the time I became aware of where I was, but I heard a knocking on the window and a man stood there and asked me if I was all right."

We cannot fault this decision, particularly since defendant was not being prejudiced since he was available to testify and explain allegations of prior inconsistent statements.

The defendant also argues that it was improper to admit the bulk of a police report which contained statements attributed to the parties involved in the accident. However, we are unable to find any objection to the introduction of this evidence in the record. Since it was not objected to at trial, it cannot be raised for the first time on appeal. *Dechand* v. *Starr*, 105 R.I. 102, 249 A.2d 650 (1969).

The last portion of evidence to which defendants object was given by an economics professor, testifying as an expert witness, and related to the projected growth rate of wages in the future. The defendants argue that the admission of the professor's calculations was prejudicial because they were merely conjectural and speculative.

The calculations were based on information garnered from Mrs. Markham about her prior earnings and future work plans. She had held two jobs in 1970 prior to the accident, one full-time 30 hour per week job, and the other a part-time job with a maximum of 20 hours per week. Together, the two paid an annual rate of about $5,000. However, from 1972, until the trial in 1976, she had been working no more than 10 hours per week at a flat annual rate of $1,000.

The expert witness calculated that Mrs. Markham's employer, the Baptist State Convention, during the period from 1971 to 1976, gave annual increases averaging 5.2% to all its employees.[3] Mrs. Markham received only the $1,000 annual payment and no increases over the period from 1972 to 1976. Using 5% as the predicted annual growth rate in wages, the economics expert then gave his computations of Mrs. Markham's projected losses in wages from 1976 to 1984

---

[3]He also calculated that wage earners in the private sector received average annual increases of 6.2% during the same period.

(the time when Mrs. Markham would reach age 65), taking into account tax and social security payments, and a reduction to "present value."[4]

He made two sets of calculations, one for a projected 30 hour work week and the other for 40 hours, and in both instances subtracted her projected $1,000 per year income. He also computed projected losses in social security benefits due to the lost income (mortality tables showed Mrs. Markham's life expectancy to be 80) and reduced these to their "present value." The defendants contend that the computations, based on predicted growth rate of wages, should have been inadmissible because they were speculative.

The defendants point to the recently enacted section of the wrongful death act which allows consideration of economic trends in determining loss of future income. See G.L. 1956 (1969 Reenactment) §10-7-1.1 as enacted by P.L. 1971, ch. 46, §1. They say that no such provision has been enacted for other situations and none should be allowed by the courts since the wrongful death provision is merely a "statutory exception." We are not persuaded by this logic.

Although there is little authority in our jurisdiction to guide us in enumerating admissible factors in determining loss of future earning capacity, we do have the often-stated standard in negligence cases that " '[c]onsequences which are contingent, speculative, or merely possible, are not proper to be considered in ascertaining the damages.' " *MacGregor* v. *Rhode Island Co.*, 27 R.I. 85, 87, 60 A. 761, 762 (1905). We do not feel that predictions of wage growth due to economic conditions over a period of time are so speculative as to be patently inadmissible. We see them as no more speculative than testimony as to prospects for future advancement. *See Miller* v. *Rhode Island Co.*, 82 A.

---

[4]"Present value" was defined as being the amount of money needed as a lump sum today, in order to generate a stream of money in the future. For example, at an annual investment rate of 6%, $1 to be received one year from now would have a present value of approximately $.94.

787 (R.I. 1912); 22 Am.Jur. 2d *Damages* §315 (1965). Thus, if the trial justice considers the information material and relevant to the issue of damages in a particular case and based on competent evidence of economic conditions, then the jury is entitled to give it whatever weight, in its judgment, is warranted.[5] The trial justice thus did not err in allowing the economics expert to testify, as to predicted future growth of wages due to economic conditions for the benefit of the jury's assessment of damages.

We next turn to defendants' objections to the trial justice's charge to the jury. We first note two basic rules that govern charges to juries:

> "It is well settled in this state that the charge given to the jury must be applicable to the facts that have been adduced in evidence and that a request for instructions is properly denied when there is no basis for such instuctions in the evidence." *Hamrick* v. *Yellow Cab Bo.,* 111 R.I. 515, 521, 304 A.2d 666, 670 (1973).

> "Where a request to charge a jury was fairly covered by the general charge, refusal to grant the request was not reversible error." *Id.* at 521, 304 A.2d at 670.

From these two broad rules, we may evaluate the seven requests for charges that were not given, as well as the alleged error in the charge on plaintiffs' burden of proof.

Requests #8 and #9 were derived from the case of *Whalen* v. *Dunbar,* 44 R.I. 136, 140-41, 115 A. 718, 719-20 (1922). They concern instructions on inherent improbabilities and testimony opposed to undisputed physical facts or in contradiction to recognized physical laws. The testimony of the parties was, no doubt, conflicting, but the trial justice did not view it as inherently improbable or opposed to undis-

---

[5]The federal courts have conflicting views on the speculative nature of testimony on the effects of inflation. *See United States* v. *English,* 521 F.2d 63 (9th Cir. 1975) (and cases cited at 73-74). We think the better view is to let the trier of fact take into account economic trends in determining damage awards — both as to increases in wages, and present value of future payments.

puted physical facts, and he therefore refused to charge on this matter. We see no error in this judgment.

Request #13 concerned the nature of speculative consequences. *See MacGregor* v. *Rhode Island Co., supra.* This was well covered by the trial justice's extensive instruction on expert witnesses as well as the specific instruction to consider only the evidence presented and not to rely on speculation or sympathy.

Request #7 on the burden of proof presents a question similar to the question of the trial justice's alleged failure to fully charge on the same issue. Although he explained in great detail that plaintiffs had the burden to prove their case by a preponderance of the evidence, he failed to instruct that if the jury found the evidence evenly balanced, plaintiffs could not prevail. While it certainly would have been preferable for the trial justice to have given this explanation, we think that his general instructions covered the point, and the jury was made to understand that plaintiffs needed a *preponderance* to prevail.

Request #15 was to the effect that if the jury found that the Penn Transportation tractor trailer did not collide with the Markham car, then Miller and Penn would not be liable. This was adequately covered by the general charge on duty of care and negligence. The trial justice took particular care to note that "negligence is not proven solely by the fact that an accident occurred." Similarly, request #6 would have absolved Penn and Miller if the accident was "unavoidable" or not due to any fault or negligence on Miller's part. This too was adequately covered in the trial justice's instructions on due care and negligent conduct.

Lastly, we consider request #5, the so-called "sudden emergency doctrine." The defendants claim that they were entitled to this charge and it was prejudicial error not to give it. We disagree.

The charge, as defendants requested it, reads as follows:

"Where an automobile driver is confronted with a sudden emergency not created by him which he could not have reasonably foreseen, failure to anticipate it and to take effective precautions against it is not actionable negligence."

This charge follows substantially the charge in *Lamarque v. Masse,* 76 R.I. 382, 387, 71 A.2d 100 102 (1950) which was a case where a car and a truck, proceeding in opposite directions, collided when the car came across the center line. The "sudden emergency doctrine" was invoked on behalf of the truck driver because he did not create the situation and could not reasonably foresee the car crossing the center of the road. However, the two key phrases, "not created by him," and "which he could not have reasonably foreseen," have been interpreted in a number of more recent cases to greatly limit the scope of this doctrine.

The doctrine was not found to be applicable in *Maklar* v. *Greene,* 106 R.I. 405, 261 A.2d 15 (1970) or in *Kolc* v. *Maratta,* 108 R.I. 623, 278 A.2d 410 (1971). *Maklar* was a rear-end collision in which we found that a driver in a line of traffic could foresee a car abruptly stopping in front of him, and was therefore not confronted with a sudden emergency as outlined in *Lamarque. Kolc* was a situation where a child, observed standing on the sidewalk among a group of children, ran into a car in the street, and we ruled that this too was a foreseeable event, not within the scope of the sudden emergency doctrine.

The defendants argue that Miller faced an unforeseeable emergency situation when, coming over the crest of a hill on a rainy night, he observed stopped vehicles blocking a portion of Route 95 and was unable to stop. They base this argument on Miller's testimony indicating the he wasn't able to see the other cars until he was 150-200 feet from them[6] and that he did not initiate the accident.

---

[6] A highway engineer contradicted this testimony by noting that the line of sight at the crest of the hill was 800-900 feet.

The trial justice apparently did not agree with defendants' argument that this accident was unforeseeable and warranted a charge on the sudden emergency doctrine. Rather than giving the requested instruction on the sudden emergency doctrine, he read from G.L. 1956 (1968 Reenactment) §§31-14-1 and 31-14-3 to show that statutory standard for drivers as bearing on the issue of negligence. These sections read in pertinent part as follows:

"31-14-1.   Reasonable and prudent speeds. — No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and *having regard to the actual and potential hazards then existing.* In every event, speed shall be *so* controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." (Emphasis added.)

"31-14-3.   Conditions requiring reduced speed. — The driver of every vehicle shall, consistent with the requirements of §31-14-1, drive at an appropriate reduced speed * * * when approaching a hill crest * * * and *when special hazard exists with* respect to pedestrians or other traffic or *by reason of weather or highway conditions.*" (Emphasis added.)

In view of the standard set by these statutes, as well as the precedents of *Maklar* and *Kolc,* we agree with the trial justice's decision that this was not an appropriate case to apply the sudden emergency doctrine. The spontaneity required in *Lamarque* was not present here, where Miller *saw* and struck *stopped* vehicles that were visible on the highway.

We next turn to the denial of defendant's motion for a directed verdict. We have often stated the standard to be used in considering this motion.

> "[T]he trial justice must view all the evidence in a light most favorable to the adverse party and is obliged to give such party the benefit of all reasonable and legitimate inferences which may be properly drawn therefrom without sifting or weighing the evidence or exercising the justice's independent judgment as to the credibility of witnesses; and, if after taking such a view, he finds that there exists issues upon which reasonable persons might draw conflicting conclusions, he should deny the motion and the issues should be left to the jury to determine." *Pimental* v. *D'Allaire*, 114 R.I. 153, 156, 330 A.2d 62, 64 (1975).

Considering the evidence in a light most favorable to Mrs. Markham, there is no doubt that she presented enough evidence to go to the jury and allow them to make a determination as to the facts. This is precisely the type of case that a jury is best suited to consider, and the trial justice was correct in denying the motion for a directed verdict.

Finally, we come to defendants' motion for a new trial, and again we have a frequently repeated standard.

> "In ruling on a motion for new trial, the trial justice need not make an exhaustive analysis of the evidence or state all his conclusions as to the weight of the evidence or the witnesses' credibility, but he should at least refer sufficiently to what motivates him to rule as he does so that the reviewing court can determine whether he has overlooked or misconceived material evidence on a controlling issue or is otherwise clearly wrong." *Morinville* v. *Morinville*, 116 R.I. 507, 511-12, 359 A.2d 48, 51 (1976).

Although the trial justice did not make an extensive analysis, he did discuss Miller's testimony and indicated his disbelief that Miller never saw Mrs. Markham's car and never hit it. In addition, he made mention of the substantially longer line of vision that was available according to

the highway engineer than that to which Miller testified. This too indicated negligence. From our reading of the transcript and the trial justice's review of it, we cannot say that he misconceived or overlooked material evidence or was otherwise clearly wrong in denying a new trial as to liability.

Nor did he err in his conclusions as to damages. The amount of damages awarded to Mrs. Markham was based on her testimony, and that of her physicians, of almost seven years of pain, discomfort and disability with an expectation of continuing discomfort and disability in the future. The award, based on competent evidence, did not shock the conscience of the trial justice, nor does it shock ours.

The amount awarded to Mr. Markham likewise was not out of line. An award of $15,000 for past and future medical expenses and for property damage to Mr. Markham's car was substantiated by evidence of past medical expenses of over $6,000 and damage to his car of approximately $850, as well as evidence of continuing medical expenses. This does not appear unreasonable.

In denying defendants' motion for a new trial for themselves, the trial justice also refused to consider the possibility of granting a new trial as to their codefendants. He said that since Miller and Penn Transportation had not filed cross actions against any of the other defendants, they had no standing to move for a new trial against codefendants who were found by the jury to be not liable. The defendants, Miller and Penn, assert that they have substantial property rights at stake under the Uniform Contribution Among Joint Tortfeasors Act, G.L. 1956 (1969 Reenactment) §10-6-1 et seq., and therefore should have standing to ask for a new trial as to their codefendants. They argue that §9-24-1 says that any party aggrieved by a final judgment has the right to appeal and that because of their substantial interest in having other codefendants to contribute to the

burden of the judgment, they fit the definition of aggrieved parties.

In addition, they argue that there was no reason to file cross-claims against codefendants since the codefendants were already parties to the action. They say that to require the several codefendants to file cross-claims against all other codefendants would merely serve to clutter the record and go aginst the basic premise of the new rules of civil procedure. "[The rules] shall be construed to secure the just, speedy, and inexpensive determination of every action." Super. R. Civ. P. 1.

However, it is well-established law that "a defendant who is himself liable is not aggrieved by the exoneration of a codefendant." *Swails* v. *General Electric Company,* 264 Cal. App. 2d 82, 70 Cal. Rptr. 143 (1968). In *Swails,* judgment was entered in favor of two codefendants but against General Electric, the third codefendant. General Electric was not allowed to appeal the judgments between the plaintiff and two codefendants, even though it asserted that it was being deprived of a right to contribution.

Similarly, in *Donofrio* v. *Farr Lincoln Mercury, Inc.,* 54 N.J. Super. 500, 504-05, 149 A.2d 611, 614 (1959), the court said:

> "The general rule is that one defendant in a tort action may not assert as a ground of appeal error favorable to a codefendant, unless that error also prejudiciously implicated appellant's own defense to the plaintiff's action. '[W]here two defendants are charged as joint tortfeasors and one is discharged, even if erroneously, the other is not entitled to urge the error; the question being whether he himself is liable and not whether the other defendant is.' "

The court in *Donofrio* also went on to say that an appeal was possible if a cross-claim was made against a codefend-

ant, but without such cross-claim, there was no standing to pursue an appeal. The court suggested that it would be inequitable to allow a contrary result because "an appellant who never believed that he had any rights against his exonerated codefendant, and who never asserted any claim against him, [could then] appeal upon alleged errors favorable to the exculpated defendant." *Id.* at 507, 149 A.2d at 615.

While we are mindful of the problem of "cluttering the record" with many cross-claims, we think that the better view is to deny standing to appeal to any codefendant who does not assert such a cross-claim in the pleadings. It is indeed true that the right to contribution may be lost, but this statutory right is inchoate until such time as another is adjudicated or admits being a joint tortfeasor and the one seeking contribution has paid more than his pro rata share. The rules permit a defendant to assert such a claim as a cross-claim for contribution in the original action, and in that way protect his right to appeal. Super. R. Civ. P. 13(g). However, if no cross-claim is filed, then no right of action exists between codefendants; and therefore, one found liable is not an aggrieved party for purposes of appeal within the meaning of §9-24-1 as to the judgment in favor of the other. Thus we conclude, as did the trial justice, that the defendants lacked standing to move for a new trial on the liability of their codefendants since they never filed cross-claims against any of those codefendants.

The defendants appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

MR. JUSTICE KELLEHER did not participate.

*Bradford Gorham,* for plaintiffs.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh* (for Cross Transportation, Inc., William Carpenter, Allstate In-

surance Company); *Francis A. Kelleher, James H. Reilly* (for Richard Serra and Lillian Serra); *Hinckley, Allen, Salisbury & Parsons, Thomas D. Gidley, Roberts C. Bruns* (for Salvatore G. Azzoli); *Martin M. Zucker* (for Penn Transportation Corp. and Terry Miller); for defendants.