**Supreme Court**

No. 2012-86-Appeal.
(PC 08-154)

Karen Lombardi                    :

                v.                    :

City of Providence et al.          :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Karen Lombardi                    :

v.                    :

City of Providence et al.                    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on March 6, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The state appeals from the entry of summary judgment in favor of its codefendant, the City of Providence (city). The state argues that the trial justice erroneously determined that the city had no duty to maintain the sidewalk where the plaintiff, Karen Lombardi, fell and was injured. After carefully considering the written and oral submissions of counsel, we conclude that cause has not been shown and that the appeal may be decided at this time. We affirm the judgment.

## Facts and Travel

In January 2007, plaintiff tripped over a portion of a sidewalk adjacent to 180 South Main Street, Providence, Rhode Island. After serving notice upon the Providence City Council in accordance with G.L. 1956 § 45-15-5,[1] plaintiff filed suit against the city, alleging that it

---

[1] General Laws 1956 § 45-15-5 provides:

negligently failed to maintain or repair the portion of the sidewalk where she fell and that she had suffered serious injuries as a result. The plaintiff later amended her complaint to add the state as a defendant. The state answered plaintiff's complaint but, significantly, did not assert a cross-claim for contribution or indemnification against the city in accordance with Rule 13(g) of the Superior Court Rules of Civil Procedure.[2]

The city moved for summary judgment, arguing that it did not owe a duty to plaintiff because the state, and not the city, was responsible for the maintenance and repair of the sidewalk. Citing G.L. 1956 §§ 24-8-6 and 24-8-9, the city contended that the state may assume full legal responsibility for designated roadways within a municipality.[3] The city argued that the

---

> "Every person who has any money due him or her from any town or city, or any claim or demand against any town or city, for any matter, cause, or thing whatsoever, shall take the following method to obtain what is due: The person shall present to the town council of the town, or to the city council of the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made to him or her by the town or city treasurer of the town or city within forty (40) days after the presentment of the claim, debt, damages, or demand, the person may commence his or her action against the treasurer for the recovery of the complaint."

[2] Rule 13(g) of the Superior Court Rules of Civil Procedure provides:

> "A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

[3] General Laws 1956 § 24-8-6 provides:

> "The director of transportation shall have the power and authority to make, lay in and upon, and construct sidewalks, including curbs, adjacent to and along either or any one side or both sides of any state road, now constructed, in the process of construction, or to be constructed, which in his or her opinion and judgment require sidewalks and curbs for pedestrian travel."

state had done just that with respect to the sidewalks on South Main Street by virtue of P.L. 1985, ch. 364, §§ 1-2.[4]

---

Section 24-8-9 provides:

> "The director of transportation shall have the power and authority to alter, to maintain, to keep in good condition, to remove ice and snow therefrom, to remove posts, steps and any other obstructions therein, to regulate the placement, structure, and alteration of curbs constructed adjacent to state roads, to regulate the height, size, and shape of awnings, signs, and any other structures which project over all curbs and all sidewalks now constructed, in the process of construction or to be constructed on state roads; except, on portion or portions of state roads in cities or towns where the territory contiguous thereto is closely built up."

[4] Public Laws 1985, ch. 364, §§ 1-2 provided, in pertinent part, as follows:

> "SECTION 1. Notwithstanding any other act or state law, the state director of transportation, by and through his designees, shall be responsible for the maintenance costs, reconstruction, snow and ice removal, construction, and maintenance of adjoining curbs and sidewalks, drainage, and installation, and maintenance of traffic signals on United States and Rhode Island roads passing through the city of Providence as routes of travel for persons traveling from other cities and towns or states as set forth in section 2 of this act; and these public highways shall be henceforth designated as state highways, as further defined in subsection 31-1-23(h) of the general law as amended.

> "SECTION 2. The following lengths of United States and Rhode Island routes within the city of Providence between the points of crossing of the city lines, and being that width between the outside boundaries of sidewalks abutting those routes, are hereby declared to be state highways:

> "* * *

> "U.S. route 6 from the intersection of South Main street and Wickenden street along Promenade street to Hartford avenue to its intersection with the Johnston town line;

> "U.S. route 44 from the intersection of South Main street and Wickenden along North Main street and Smith street along Smith street to its intersection with the North Providence town line."

The state opposed the city's motion, arguing that there existed a genuine issue of material fact as to which entity—the state or the city—bore responsibility to maintain the sidewalk where plaintiff fell. The state pointed to the following facts that, the state contended, indicated that the city had exercised control over the sidewalks on South Main Street: an alleged agreement between the city and the state that allocated responsibility for maintenance of the sidewalks to the city; repairs to the sidewalks and street made by the city; the fact that the city "routinely maintains South Main Street"; and, finally, the fact that the city posted parking meters and collected parking fees and fines along the street. The state argued that it had delegated its responsibility under P.L. 1985, ch. 364, §§ 1-2 to the city by virtue of the agreement.

In response, the city relied upon a rescript decision by a justice of the Superior Court that involved facts similar to this case to support its position that no genuine issue of material fact existed with respect to which entity had a duty to maintain the sidewalk. In that earlier case, the plaintiff tripped on the sidewalk at 180 South Main Street and sued the city and the state; the city successfully obtained summary judgment because the trial justice determined that it had no duty to maintain the sidewalk. The city argued that a similar result was required in this case.

After the trial justice granted summary judgment, the state moved for reconsideration of that decision. The state reiterated its position that the city had exercised control over the South Main Street sidewalks and supplemented that argument with the assertion that the city has maintained vegetation along the sidewalks that has necessitated root repair and the consequent upheaval of pieces of the sidewalk. The state again argued that this evidence created a genuine issue of material fact as to the identity of the entity that was responsible for sidewalk repair. In

---

In 2011, the General Assembly repealed P.L. 1985, ch. 364 in its entirety. P.L. 2011, ch. 395, § 1; P.L. 2011, ch. 333, § 1. This circumstance has no bearing on this case, however, as P.L. 1985, ch. 364, §§ 1-2 was in full effect at the time of plaintiff's fall.

its opposition to reconsideration, the city argued that the state's evidence did not establish any disputed facts because there was no connection between the city's actions with respect to South Main Street and the defect that caused plaintiff's fall. Additionally, the city contended that, under § 45-15-11, a municipality does not assume liability for injuries sustained on a highway or street simply by making repairs to the highway or street.[5]

The trial justice denied the state's motion for reconsideration of the grant of summary judgment in favor of the city. The plaintiff moved for relief from the judgment based on newly discovered work orders that indicated that the city had made repairs to the concrete in the sidewalk at 180 South Main Street. The state filed a notice of appeal and, the next day, filed its own motion for relief from judgment based on the same two work orders that were cited in plaintiff's motion. The trial justice denied these motions. Final judgment on plaintiff's claim was entered in favor of the city.[6]

After oral argument before this Court, we ordered the parties to file supplemental memoranda on the issue of whether the state, having chosen not to file a cross-claim against the city, was a "party aggrieved by" the final judgment under G.L. 1956 § 9-24-1 and this Court's decisions in Adams v. United Developers, Inc., 121 R.I. 177, 179-80, 397 A.2d 503, 505 (1979), and Markham v. Cross Transportation, Inc., 119 R.I. 213, 229, 376 A.2d 1359, 1367-68 (1977).

---

[5] Section 45-15-11 provides:

> "No work done by any city or town, upon any way or street, in mending or repairing the way or street, shall constitute or be any evidence of an acceptance of the way or street by the city or town, nor shall it in any way change the status of the way or street; and the mending or repairing of the way or street shall in no way render the city or town liable to pay compensation or damages by reason of injuries suffered by any person or persons traveling upon the way or street."

[6] Although the caption of this case bears her name, plaintiff is not a party to this appeal, and, through counsel, she has represented to this Court that she "takes no position as to issues between the parties" on appeal.

**Analysis**

"Unless an individual is qualified as an appellant, his [or her] purported appeal will be considered void." Adams, 121 R.I. at 179, 397 A.2d at 505. In this case, the right to appeal from a final judgment of the Superior Court is set forth in § 9-24-1, which provides, in pertinent part, that "[a]ny party aggrieved by a final judgment, decree, or order of the [S]uperior [C]ourt may, within the time prescribed by applicable procedural rules, appeal to the [S]upreme [C]ourt." (Emphasis added.)

Section 9-24-1 "must be read in light of our long-established rule that a person is aggrieved by a judgment when it adversely affects, in a substantial manner, his [or her] personal or property rights." Adams, 121 R.I. at 179, 397 A.2d at 505; see also Bowles v. Dannin, 62 R.I. 36, 42, 2 A.2d 892, 895 (1938) ("An aggrieved party [under a predecessor statute of § 9-24-1 with nearly identical language] has been held by this [C]ourt to be one who 'is aggrieved by the judgment or decree when it operates on his [or her] rights of property, or bears directly upon his [or her] interest. * * * The word "aggrieved" refers to a substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation.'" quoting Tillinghast v. Brown University, 24 R.I. 179, 183-84, 52 A. 891, 892 (1902)). "Moreover, an aggrieved party is one whose interest in the lower court decision is actual and practical, as opposed to merely theoretical." Adams, 121 R.I. at 180, 397 A.2d at 505 (emphasis added); see also Bowles, 62 R.I. at 42, 2 A.2d at 895.

In this case, because it chose not to file a cross-claim against the city, the state is not an aggrieved party under this standard. The trial justice entered summary judgment in favor of the city on plaintiff's claim—the only claim asserted against the city. The plaintiff, unquestionably a "party aggrieved by" entry of summary judgment in favor of the city, has not appealed from this

judgment; indeed, she has represented to this Court that she takes no position on the merits of the state's appeal. The state is not permitted to prosecute an appeal in plaintiff's stead when she has declined to do so. Because the state has not asserted any cross-claim against its codefendant, it is not sufficiently aggrieved by the entry of summary judgment in favor of the city on plaintiff's claim.

This conclusion is compelled by our decision in <u>Markham</u>. In <u>Markham</u>, 119 R.I. at 217-19, 228, 376 A.2d at 1362, 1367, the jury returned a split verdict, finding several defendants not liable (codefendants) and several other defendants liable to the plaintiffs; two of the defendants who were found liable (appellants) moved for a new trial with respect to the verdict in favor of the codefendants. The trial justice denied the motion, concluding that, because the appellants had not filed any cross-claims against the codefendants, they lacked standing to move for a new trial with respect to the codefendants. <u>Id.</u> at 228, 376 A.2d at 1367. The appellants appealed, arguing that, "because of their substantial interest in having other codefendants to contribute to the burden of the judgment, they fit the definition of aggrieved parties" under § 9-24-1. <u>Markham</u>, 119 R.I. at 219, 228-29, 376 A.2d at 1362, 1367.

We disagreed, declaring that "it is well-established law that 'a defendant who is himself liable is not aggrieved by the exoneration of a codefendant.'" <u>Markham</u>, 119 R.I. at 229, 376 A.2d at 1367 (quoting <u>Swails v. General Electric Co.</u>, 70 Cal. Rptr. 143, 146 (Cal. Ct. App. 1968)). We held that "the better view is to deny standing to appeal to any codefendant who does not assert * * * a cross-claim [against an exculpated codefendant] in the pleadings." <u>Id.</u> at 230, 376 A.2d at 1368. We elaborated:

> "The court in <u>Donofrio</u> also went on to say that an appeal was possible if a cross-claim was made against a codefendant, but without such cross-claim, there was no standing to pursue an appeal. The court suggested that it would be inequitable to allow a

contrary result because 'an appellant who never believed that he [or she] had any rights against his [or her] exonerated co-defendant, and who never asserted any claim against him [or her], [could then] appeal upon alleged errors favorable to the exculpated defendant.'" Id. at 229-30, 376 A.2d at 1368 (quoting Donofrio v. Farr Lincoln Mercury, Inc., 149 A.2d 611, 615 (N.J. Super. Ct. App. Div. 1959)).

In Markham, this Court recognized the potential right of contribution of the appellants, which was the basis of their claim for a new trial:

> "It is indeed true that the right to contribution may be lost, but this statutory right is inchoate until such time as another is adjudicated or admits being a joint tortfeasor and the one seeking contribution has paid more than his [or her] pro rata share. The rules permit a defendant to assert such a claim as a cross-claim for contribution in the original action, and in that way protect his [or her] right to appeal. Super. R. Civ. P. 13(g). However, if no cross-claim is filed, then no right of action exists between codefendants; and therefore, one found liable is not an aggrieved party for purposes of appeal within the meaning of § 9-24-1 as to the judgment in favor of the other." Markham, 119 R.I. at 230, 376 A.2d at 1368.

In this case, as in Markham, a defendant who has not asserted a cross-claim against its now-exculpated codefendant is attempting to appeal from the judgment entered on the plaintiff's claims in favor of the codefendant. Because the state has not filed a cross-claim against the city, "no right of action exists between [these] codefendants." Markham, 119 R.I. at 230, 376 A.2d at 1368. Therefore, the state "is not an aggrieved party for purposes of appeal within the meaning of § 9-24-1 as to the judgment in favor of the [city]." Markham, 119 R.I. at 230, 376 A.2d at 1368.

The state attempts to blunt the force of this reasoning by arguing that "[t]he holding in Markham has been limited to standing to move for a new trial." To support this contention, the state cites this Court's decisions in Cooney v. Molis, 640 A.2d 527, 529 (R.I. 1994), and

LaBounty v. LaBounty, 497 A.2d 302, 306 (R.I. 1985). We disagree that our holding in Markham has been limited to the context of a motion for a new trial.

In LaBounty, 497 A.2d at 303-04, the jury found the appellant, LaBounty, 25 percent liable to the plaintiff and found another defendant—who had settled with the plaintiff for $10,000 in exchange for a joint-tortfeasor release, in which the plaintiff released LaBounty "from any and all actions, causes of action, claims and demands for, upon or by reason of the pro rata share caused by or attributable to the [settling defendant]"—to be 75 percent at fault for the plaintiff's injuries. The trial justice entered judgment in the plaintiff's favor against LaBounty in the amount of $62,500, which represented 25 percent of the plaintiff's total damages of $250,000. Id. at 304. However, the trial justice later modified the judgment to the sum of $240,000, representing the plaintiff's damages that remained after the settling defendant's payment of $10,000 was subtracted from the total. Id.

Before this Court on appeal from the modified judgment, the plaintiff argued that, because LaBounty had not filed a cross-claim against the settling defendant, this Court's decision in Markham doomed LaBounty's appeal. LaBounty, 497 A.2d at 306. We disagreed, declaring that "[t]he absence of a cross-claim in this case is immaterial since [LaBounty] is not attempting to assert any claim against [the settling defendant] but only to obtain the benefit of the release secured by [the settling defendant] for [LaBounty's] own benefit." Id. (emphasis added). Thus, LaBounty involved a situation where the appellant was appealing from a judgment increasing the sum of money he owed to the plaintiff—a judgment by which the appellant unquestionably was aggrieved—and not a situation, like that involved in this case and in Markham, where one defendant appeals from a judgment that a codefendant is not liable to the plaintiff. LaBounty did not confine Markham to the context of standing to move for a new trial.

Similarly, this Court's decision in Cooney did not limit our holding in Markham. In Cooney, 640 A.2d at 528, we confronted the question of "whether settling joint tortfeasors who are not liable to any other parties in a suit must be retained in the suit to determine the nonsettling tortfeasor's proportionate liability"; we held that they need not be retained. In an effort to forestall this holding, the nonsettling tortfeasor, Molis, argued that the settling tortfeasors needed to "remain as parties to preserve Molis's right to appeal the jury apportionment of liability" because, under Markham, "his failure to maintain a cross-claim against the [settling tortfeasors] would preclude his appeal of the jury's apportionment of liability." Cooney, 640 A.2d at 529. We rejected this contention, explaining that Markham "in no way precludes a defendant's otherwise proper appeal of a jury's apportionment of liability when there was a settling joint tortfeasor." Id.

Cooney simply recognizes that a defendant who is found liable to a plaintiff is "a party aggrieved by" the judgment entered against the defendant in favor of the plaintiff, § 9-24-1; that decision does not purport to limit Markham to the new-trial-motion context or to preclude its application in a situation where, as here, one defendant appeals from the entry of judgment in favor of a codefendant on the plaintiff's claim when the appellant-defendant has chosen not to assert a cross-claim against the codefendant.

The state also seeks to distinguish Markham by noting that the judgment exonerating a codefendant in this case, unlike in Markham, was entered after limited discovery; the state notes that the work orders showing the city's repairs to the sidewalk at 180 South Main Street were not uncovered until after summary judgment was entered. Additionally, the state argues that

premature assertion of a cross-claim would run afoul of Rule 11 of the Superior Court Rules of Civil Procedure.[7] We are unconvinced.

For one thing, the filing of a cross-claim need not await the discovery of irrefutable evidence that a claim for contribution or indemnification exists or an ultimate finding of liability by the jury or trial justice; the text of Rule 13(g) clearly permits a cross-claim to assert "that the party against whom it is asserted is or <u>may</u> <u>be</u> liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant." (Emphasis added.) For another thing, prior to the entry of summary judgment in this case, the state argued to the trial justice that the city owed a duty to maintain the area of the sidewalk where plaintiff fell; to support this contention, the state relied on: the agreement between the city and the state that allocated some responsibility for maintenance of the sidewalks to the city; the city's previous repairs to the sidewalks and street; and the city's maintenance of posted parking meters and collection of parking fees and fines along the street. Had the state filed a cross-claim against the city

---

[7] Rule 11 of the Superior Court Rules of Civil Procedure provides, in pertinent part, as follows:

"Every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address and telephone number shall be stated. * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, any appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

- 11 -

asserting, pursuant to Rule 13(g), "that the [city] * * * may be liable to the [state] for all or part of a claim asserted in the action against the [state]," this evidence easily would have complied with the mandate of Rule 11 that the cross-claim be "well grounded in fact and * * * warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and * * * not [be] interposed for any improper purpose."

The state insists that it is sufficiently aggrieved by the final judgment in favor of the city on plaintiff's claim because the judgment effectively holds the state responsible for maintenance of the sidewalks on South Main Street and affords the city immunity from liability for its negligent repairs. We disagree. The entry of summary judgment for the city accomplished only a determination that the city owed no duty to plaintiff in this case; the trial justice did not, as the state suggests, purport to delineate, for all time, the respective maintenance obligations of the city and state with respect to South Main Street.[8]

Finally, both the state and the city urge us to overlook the state's lack of standing and to reach the merits of the state's appeal. The city asserts that "the question of the [c]ity's and the [s]tate's respective responsibilities for various public roads has been at the heart of numerous lawsuits[,]" and both the city and the state agree that immediate resolution of the issues raised in

---

[8] We express no opinion on whether the state may seek to implead the city, which is now no longer a party to this action by virtue of the entry of final judgment on the only claim currently asserted against it, under Rule 14(a) of the Superior Court Rules of Civil Procedure. Similarly, we express no opinion on whether the state may initiate a separate action for contribution or indemnification against the city in the event the state should be found liable to plaintiff. In either scenario, the state may be eligible for appellate review—this time as a sufficiently aggrieved party—from an adverse judgment entered against it. The fact that the state may have alternative avenues for securing our review of the issues it presents in this appeal convinces us that the impact of this judgment on the state presently is speculative, and not actual and practical as our cases require. See Adams v. United Developers, Inc., 121 R.I. 177, 181, 397 A.2d 503, 506 (1979) ("The judgment in the court below has such a speculative effect on the rights of [the appellant] that we believe it lacks the requisite interest to qualify as an appellant.").

the state's appeal would serve the public interest. Additionally, both parties stress that, in the interests of judicial economy, this Court should address the merits of the state's appeal.

Although we have the authority to look past an appellant's dubious standing and tackle the merits of an appeal, see, e.g., Ricard v. John Hancock Mutual Life Insurance Co., 113 R.I. 528, 530-31, 535-36, 324 A.2d 671, 672-73, 675 (1974), we decline to do so in this case for several reasons. The fact that the issues raised in the state's appeal are also "at the heart of numerous lawsuits" actually undermines the plea for immediate review. The pendency of these "numerous lawsuits" increases the chances that the issues raised in the state's appeal will be brought before this Court by a sufficiently aggrieved appellant after the allegedly injured party has had his or her day in court. We reiterate that, had the state asserted a cross-claim against the city and summary judgment entered in favor of the city on that cross-claim, we would not be confronted with a problem of standing. Additionally, if plaintiff had prosecuted this appeal, we would not hesitate to address her appellate contentions. See Pullen v. State, 707 A.2d 686, 687-92 (R.I. 1998) (addressing the merits of the plaintiff's appeal from the entry of summary judgment in favor of the City of Newport on the plaintiff's claim against it on the ground that the state, and not the City of Newport, was responsible for the sidewalk where the plaintiff was injured).

Also, even if a decision on the merits of the state's appeal would serve the interests of judicial economy as well as the public interest, we cannot ignore the countervailing interest in deciding only those cases in which the party pursuing the appeal has standing. This Court "will not entertain an abstract question or render an advisory opinion, * * * with the exception for constitutionally mandated advisory opinions found in article 10, section 3, of the Rhode Island Constitution." H.V. Collins Co. v. Williams, 990 A.2d 845, 847 (R.I. 2010); see also Rhode

Island Republican Party v. Daluz, 961 A.2d 287, 295 (R.I. 2008). The request that we overlook the state's lack of standing and issue a decision on the merits effectively is a request for an advisory opinion in a situation not encompassed by article 10, section 3 of the Rhode Island Constitution.

In sum, we will not address the issues raised in the state's appeal until those issues are presented to us by a sufficiently aggrieved party under § 9-24-1. The state presently is not such a party in this case. Accordingly, we express no opinion on these issues at this time.

## Conclusion

For the reasons articulated above, we affirm the judgment below. The papers may be remanded to the Superior Court.



**TITLE OF CASE:**          Karen Lombardi v. City of Providence et al.

**CASE NO:**          No. 2012-86-Appeal.
(PC 08-154)

**COURT:**          Supreme Court

**DATE OPINION FILED:**  July 2, 2013

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Walter R. Stone

**ATTORNEYS ON APPEAL:**

For State of Rhode Island:  Matthew I. Shaw, Esq.

For City of Providence:  Megan Maciasz, Esq.