ANDREW J. RIVARD *vs.* ERNEST PLANTE.

MAY 13, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

314

FLYNN, C. J.   This is an action of trespass on the case for negligence arising out of a rear-end collision between two cars proceeding in the same direction.   It was tried before a justice of the superior court sitting without a jury and resulted in a decision for the defendant.   The case is here on plaintiff's bill of exceptions to that decision and to certain rulings on evidence during the trial.

It is undisputed that the accident happened March 18, 1951 between 7 and 8 p.m. on Pawtucket avenue in the town of East Providence; that the weather was clear and the road was dry; that Pawtucket avenue, a public highway running generally north and south, has two lanes for northbound and two lanes for southbound traffic; and that Chestnut street, a two-lane public highway running generally east and west, intersects Pawtucket avenue from the east but does not cross that avenue.

The evidence for plaintiff included testimony of Carl V. Olson, who was operating a third automobile which was involved in this accident.   According to Olson, he had been driving westerly on Chestnut street and had come to a full stop at its intersection with Pawtucket avenue.   At that time he saw two automobiles, one following the other, as they were approaching in the southbound traffic lane nearest the center of Pawtucket avenue.   When these two cars,

which later proved to belong to plaintiff and defendant respectively, were some distance away from Chestnut street Olson started his automobile, drove it across the two northbound lanes of Pawtucket avenue, and then turned sharply left into the southbound traffic lane ahead of plaintiff. The speed at which Olson drove to get into the lane ahead of the oncoming cars is not directly disclosed. However, after driving southerly in that lane to a point "one house and lot" away from Chestnut street, which later was estimated to be about 75 feet, he came to a complete stop.

The witness Olson also explained that he had stopped at that point, with his front wheels turned slightly toward his left, waiting for approaching northbound traffic to pass so that he could proceed directly across the northbound traffic lanes to the driveway of his house, which was located on the easterly side of Pawtucket avenue south of Chestnut street. According to him, his car was stopped in that lane for a period of five to eight seconds. There is no evidence that he gave a hand or other signal of his intention to slow down, stop or turn. While he was completely stopped with no brakes being on, the front of plaintiff's automobile collided with the rear of his car. He did not see or hear the collision between the cars of plaintiff and defendant but presumed that such collision forced the plaintiff's car to strike his automobile.

The plaintiff in general corroborated Olson's testimony. He further stated that he, plaintiff, had slowed down and fully stopped closely behind Olson's automobile because he did not care to risk driving by him in the right lane where traffic, which he had previously passed before reaching Chestnut street, was moving. According to his testimony he had stopped without applying his brakes suddenly and apparently he gave no signal by hand of his intention to slow down. He also explained that he was stopped behind Olson's car some five or six seconds when for the first time he saw through the mirror the approaching defendant's

car. It was then so close that he could not see the front grille work but only the ornament on top of the hood, and he then told his wife to brace herself because he felt a collision was impending.

The plaintiff further testified that he did not strike Olson's car before defendant's car collided with his automobile, and that such collision drove his car against the rear end of Olson's automobile. The plaintiff's wife, who was riding on the front seat with him, testified more or less to the same effect. However, according to her, Olson's car had come out of Chestnut street and turned into the lane ahead of them on Pawtucket avenue when they were only *a couple* of car lengths away, instead of four or five as plaintiff had testified.

On the other hand, defendant testified that for perhaps 100 yards he had been following plaintiff's automobile at a distance of from 25 to 30 feet, and that from the top of a hill, about two blocks before reaching Chestnut street, both cars had been proceeding at the same rate of speed, namely, about 20 to 25 miles per hour. He also stated that he did not see Olson's car cutting out from Chestnut street into the lane ahead of plaintiff. However, he explained that at the moment his view of Chestnut street was obscured because he was coming up the hill, whereas plaintiff had arrived at the top and could see such intersection. He further testified in substance that as they approached and passed Chestnut street plaintiff did not gradually slow down or give any signal by hand or otherwise of an intention to slow down or stop; that there were no lights on the rear of plaintiff's car; that plaintiff without warning suddenly jammed his brakes on so hard that the rear end of his car jacked up and the front went down; that he, defendant, immediately applied his brakes hard, at the same time reaching out one hand to prevent his little daughter from falling from the seat; and that notwithstanding his prompt and hard application of the brakes the front bumper of his

car slid under the rear bumper of plaintiff's car. The defendant's testimony throughout was corroborated by the witness Joseph P. Brennan, who was riding with him.

There was some other evidence concerning alleged conversations between Olson, the plaintiff and Brennan after the accident, and later between an investigator for plaintiff's insurer and the defendant, who had called at the investigator's office at his request. Certain material portions of these conversations are in conflict and the investigator, who testified for plaintiff, offered no statement signed by defendant, nor did he have at the trial any contemporary written memoranda to support the substance of what he was testifying to, although he stated he had refreshed his memory from such a memoranda before he came to court.

The trial justice in his decision referred to the burden of proof that remained upon the plaintiff, expressed some doubt as to whether he had suffered as much damage as he claimed, and then concluded that the decision in any event turned on the question of liability. After briefly referring to the important evidence as he viewed it, he found in substance and effect that the accident had not taken place as plaintiff and Olson had testified; that it had happened unexpectedly and quickly; and that he was not satisfied that plaintiff had sustained the burden of proof as to defendant's liability. He therefore rendered a decision for defendant.

The plaintiff's bill of exceptions sets forth nine exceptions but in his brief the case is argued under six "issues" which have been renumbered and do not correspond with the numbered exceptions in the bill of exceptions. Nor do they properly identify the corresponding exceptions being discussed. This leads to confusion and difficulty, and such practice was disapproved in *White* v. *Alexion,* 79 R. I. 297, 87 A.2d 853. If an attorney argues a case under so-called issues, the least he must do is to identify the particular exceptions being discussed thereunder so that we may know whether his points are based upon valid exceptions.

However, disregarding the improper and confusing method of briefing, exceptions numbered 1, 3, 5 and 7 need no consideration. According to the transcript, exception 1 was taken after the question had been answered and no motion to strike such answer was made or ruled upon. Exceptions 3, 5 and 7 are not briefed or argued and are deemed to be waived.

Exception 2 is to the court's disallowance of certain testimony by an insurance investigator concerning defendant's subsequent statements as to his liability. The trial justice ruled that the form in which the question was asked would require a legal conclusion and would make the witness the judge of defendant's liability. Moreover the facts of the conversation appear elsewhere to have been substantially testified to by the witness. Therefore we find no prejudicial error in this ruling and exception 2 is overruled.

Under exception 4 plaintiff urges that the trial justice erred as to that part of the decision wherein he stated that "all three automobiles in question were traveling at the same rate of speed." It is contended by plaintiff that the preponderance of evidence required a finding that the Olson automobile had been stopped before the collision.

This contention misconceives the finding actually made by the trial justice. He did not state that the collision took place while all three cars were moving at the same rate of speed. He apparently had in mind that, from the time Olson had turned from Chestnut street into Pawtucket avenue ahead of plaintiff and defendant until just before Olson suddenly stopped, all three cars were proceeding at "almost the same speed," namely, 20 to 25 miles per hour, which he found was not excessive in the circumstances. If the testimony of plaintiff's wife is believed, that Olson turned into the same lane ahead of them when plaintiff's car was only two car lengths away, the inference would be reasonable that unless Olson was then driving at substantially the same rate of speed as plaintiff and defendant,

his car would have been struck before it had stopped. We find no merit in this contention and exception 4 is overruled.

Under exception 6 plaintiff appears to contend that the court erred in failing to find that defendant was negligent in not keeping a proper lookout so as to see the Olson car coming out of Chestnut street. While the trial justice might have been justified in so finding if he believed certain evidence, we cannot say as a matter of law that he was in error in failing to reach that conclusion. He may have believed the explanation given by defendant and witness Brennan as to why they had not seen Olson coming out of Chestnut street. Furthermore the accident did not happen at that intersection and even if defendant should have seen Olson turn into Pawtucket avenue, such fact would not necessarily convey notice that Olson intended to proceed in the passing lane only 75 feet before stopping suddenly and without warning.

Whether Olson had stopped suddenly without cause or warning, whether plaintiff and defendant were following at unreasonable distances or excessive speed, and whether defendant had maintained a proper lookout, were all questions of fact in the circumstances upon which different minds might reasonably reach opposite conclusions. The credibility of the witnesses would be important in such consideration. From an examination of the transcript we cannot say as a matter of law that the trial justice was clearly wrong in his conclusion. Exception 6 is therefore overruled.

Exception 8 relates to the alleged failure of the trial justice to find that defendant was negligent "in failing to keep his auto a sufficient distance behind the auto in front of him in order to be able to stop it within the clear distance ahead upon the occurrence of a situation of peril." No case in this jurisdiction is cited to support such contention so far as it relates to an unexpected emergency. We have held that proof of a rear-end collision is prima facie evidence

of negligence against the driver of the car in the rear; that the burden of explaining by evidence then shifts to the defendant; and that the ultimate burden of proof in the case on all issues is still on the plaintiff. *Douglas* v. *Silvia,* 55 R. I. 260; *Riccio* v. *Ginsberg,* 49 R. I. 32; *O'Donnell* v. *United Electric Rys.,* 48 R. I. 18. None of these cases states any precise rule as to speed in miles per hour or distance in feet that a person must maintain when driving behind another automobile. However, the duty of such a driver is clear and he must keep a proper lookout and have the control of his car and operate it in the manner that an ordinary prudent person would be expected to have and exercise in the same or similar circumstances.

The trial justice evidently believed that just before the accident none of the automobiles was being operated at excessive speed, and that the distance of 25 or 30 feet separating the cars of defendant and plaintiff was not so close under all the conditions as to make defendant negligent as a matter of law. He apparently felt that in the prevailing circumstances neither defendant nor plaintiff would ordinarily have reason to anticipate that Olson, so soon after cutting in ahead of them in the passing lane of Pawtucket avenue, would suddenly stop without warning of any kind at a point where there was no intersection, and no cross traffic or traffic signal, and no obstruction that had suddenly appeared or was obvious for any length of time. At any rate, while one view of the evidence might support a finding that the accident happened as Olson and the plaintiff contend, the evidence as a whole did not require that conclusion. There was a reasonable basis for the view that defendant in effect was confronted with an emergency which was not created by him but by Olson; that he had acted previously thereto with ordinary care; and that when so confronted suddenly he did everything reasonably to be expected of a prudent person in the circumstances to avoid the collision. We find no law stated in the Rhode

Island cases which would require us to hold that the trial justice was clearly wrong on this record.

Under exception 9 the plaintiff's contention is that the defendant, in the event of an impending accident, should exercise the *highest degree* of care to avoid said accident. That is not the law of this state. The trial justice stated and followed the correct law. This exception is overruled.

In this connection and generally it may be pointed out that plaintiff devoted some thirty pages of his brief to excerpts from the syllabi of a great number of cases in many states, without regard to whether the cases were governed by a statute or whether their facts were substantially similar to those of the instant case. Nowhere is any pertinent Rhode Island case mentioned, although several which deal with the law governing rear-end collisions and emergencies could have been presented. The unnecessary piling up of such citations from other states in this fashion and the omission to cite appropriate Rhode Island decisions is of no assistance to this court and constitutes a practice that is expressly disapproved.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Aram K. Berberian,* for plaintiff.

*Anthony Grilli, Joseph F. Baffoni,* for defendant.