399 A.2d 1226.

RICHARD ROTH *et al. vs.* HOXSIE'S ARCO SERVICE, INC. *et al.*

APRIL 9, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.   The plaintiffs Richard Roth (Roth) and his father Edward Roth brought this civil action to recover for personal injuries and property damage allegedly sustained as a result of an accident on the premises of the defendant Hoxsie's Arco Service, Inc. (Hoxsie's). An employee of Hoxsie's, Richard Russell (Russell), is the codefendant in this action. The case was tried before a

Superior Court jury which rendered a verdict in favor of the defendants.

The record discloses that the accident occurred at about 7:20 a.m. on March 12, 1971. Roth, a part-time employee at Hoxsie's, had brought his father's car to the station to replace a taillight. Roth claims that he parked the car in front of the station, replaced the faulty bulb and went back into the station to replace the screwdriver he had used. He further testified that upon emerging from the station he observed that Russell had moved the car. According to Roth, seconds later the car began to roll backwards toward an adjacent roadway. He then started towards the car, and, in attempting to jump into it, suffered injuries to his ankle and foot.

Russell testified that he did move the Roth car. In sharp contrast to Roth's testimony, however, Russell stated that 2 or 3 minutes had elapsed before Roth yelled that the car was moving. Russell further testified that following the accident, he found a screwdriver on the pavement at the point where Roth initially parked and fixed the car.

The jury found Russell's version acceptable and rendered a verdict in defendant's favor. The same was true of the trial justice, who ruled in defendant's favor on plaintiffs' motion for a new trial. On appeal, plaintiffs claim that the trial judge erred in refusing certain requests for jury instructions and in denying their motion for a new trial.

## I.

The first assignment of error is to the trial justice's refusal to grant the following requested instruction:

### REQUEST FOR INSTRUCTIONS

A person who without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself, or to others, is not expected or required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments.

His duty is to exercise only that care which an ordinarily prudent person would exercise in the same situation.

If at that moment, he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might be followed by an ordinarily prudent person under the same conditions, he does all that the law requires of him, although in the light of after events, it should appear that a different course would have been safer and better.

The trial justice instructed the jury that it must initially determine whether Russell was guilty of any negligent conduct that proximately caused Roth's injuries. If it found in the affirmative, the jury then had to determine whether Roth himself acted "reasonably under the circumstances.[1]"

---

[1] The following special interrogatories propounded to the jury incorporated the judge's instructions:

"*Question 1.* Was JAMES RUSSELL guilty of any negligence which was a proximate cause of the accident?

 *Answer:* YES_____
     NO _____

In the event Question 1 is answered "NO" then, do not answer any further questions. You should return a verdict for the defendants. In the event your answer to Question 1 is "YES" then answer Question 2.

*Question 2.* Was RICHARD ROTH guilty of any negligence which was a proximate cause of the accident?

 *Answer:* YES_____
     NO _____

If your answer to Question 2 is "YES" then answer the following questions; if "NO" answer question 4 only.

*Question 3.* Assuming that RICHARD ROTH was guilty of negligence then fill in the percentage that you feel his negligence contributed to cause the accident (the percentage should be based upon a percentage of 100%).

 Percentage: _____

*Question 4.* What is the total amount of damages suffered by RICHARD ROTH?

         $ _____

*Question 5.* What is the total amount of damages recoverable by RICHARD ROTH (reducing his total damages by the percentage of his causal negligence, if any)?

         $_____ "

No question of agency was presented to the jury. All parties conceded that Russell was acting within the scope of his employment at the time he moved Roth's car.

The plaintiffs claim that these instructions utilize an improper standard of care.

The plaintiffs' requested charge reflects the "sudden emergency doctrine," which recognizes that individuals confronted with sudden and unexpected events demanding immediate action cannot be held to the same standard of care required of one in no such predicament. *See Lamarque* v. *Masse*, 76 R.I. 382, 387, 71 A.2d 100, 102 (1950). Although a standard of reasonableness is still applicable, the exigent situation is one factor to be considered in evaluating the actor's conduct. Furthermore, the doctrine is unavailable to an actor whose own negligence created the emergency. *Mercurio* v. *Fascitelli*, 116 R.I. 237, 241, 354 A.2d 736, 739 (1976), *citing* Prosser, *Torts* §33 at 170 (4th ed. 1971).

Roth's testimony showed that when he attempted to enter the car he was responding to an emergency not of his own creation. Because it is well settled that requested charges must be given when they are applicable to facts adduced in evidence, we hold that Roth was entitled to the requested charge. *Hamrick* v. *Yellow Cab Co.*, 111 R.I. 515, 521, 304 A.2d 666, 670 (1973); *D'Andrea* v. *Sears, Roebuck & Co.*, 109 R.I. 479, 485, 287 A.2d 629, 632 (1972); *Handy* v. *Geary*, 105 R.I. 419, 432, 252 A.2d 435, 442 (1969); *Cinq-Mars* v. *Standard Cab Co.*, 103 R.I. 103, 109, 235 A.2d 81, 84 (1967).

Although the court improperly refused to give the requested instruction, some resulting prejudicial harm must be shown to justify reversal. *Sommer* v. *Barr*, 98 R.I. 274, 276, 201 A.2d 136, 137 (1964). In this case the jury was specifically instructed that it must first determine whether Russell was negligent. The jury's initial special finding that Russell was free from negligence precluded it from reaching the question of Roth's possible comparative negligence. Because the jury never had to evaluate Roth's conduct, we conclude that the failure to grant the requested instruction on the emergency doctrine was harmless error. *See Davis* v. *Liesenfeld*, 308 Minn. 1, 5, 240 N.W.2d 548, 550 (1976); *Staudinger* v. *Sooner Pipe & Supply Corp.*, 208 Kan. 100,

109-10, 490 P.2d 619, 627 (1971); *Beck* v. *Fond Du Lac Highway Committee*, 231 Wis. 593, 601, 286 N.W. 64, 67 (1939).

## II.

The plaintiffs next claim that the trial justice erred in denying their motion for a new trial. When considering whether to grant such a motion, a trial justice must independently weigh the material evidence in light of his charge to the jury and the credibility of the witnesses who have appeared before him. In so doing he is free to pick and choose whom and what he will believe and to draw reasonable inferences from the record. *Barbato* v. *Epstein*, 97 R.I. 191, 196 A.2d 836 (1964). Litigants challenging a denial of a motion for a new trial bear the burden of convincing us that the trial justice was clearly wrong or misconceived or overlooked material evidence on a controlling issue. *Puccio* v. *Diamond Hill Ski Area, Inc.*, 120 R.I. 28, 39, 385 A.2d 650, 657 (1978); *Grenier* v. *Royal Cab, Inc.*, 117 R.I. 475, 477, 368 A.2d 1232, 1234 (1977); *Gordon* v. *Campanella Corp.*, 112 R.I. 417, 421, 311 A.2d 844, 847 (1973).

The plaintiffs' attempt to meet this burden by contending that the trial justice unreasonably inferred from the location of the screwdriver after the accident that Roth had worked on this car after Russell had moved it and that Roth, rather than Russell, had caused the car to move. Admittedly, in considering the motion, the trial justice stated that his interpretation of the testimony placed the screwdriver behind the car after it had been moved by Russell. The only testimony in the record, however, clearly places the screwdriver where Roth had initially parked the car and not where Russell later moved the car. Therefore, the trial justice misconceived the evidence upon which he based his inference.

An inadvertent reference, however, does not automatically serve to grant the appellant a new trial. *See Puccio* v. *Diamond Hill Ski Area, Inc.*, 120 R.I. at 41, 385 A.2d at 657. In such circumstances, we will sustain the jury's verdict if the record, viewed in the light most favorable to the

prevailing party, contains any competent evidence that supports the verdict. *Morinville* v. *Morinville*, 116 R.I. 507, 516, 359 A.2d 48, 54 (1976). Applying the *Morinville* standard, we refer to testimony presented by Russell that 2 or 3 minutes had elapsed between the time when he moved the car and when Roth yelled that the car was moving. This evidentiary fact could properly be considered by the jury and could naturally point it to the conclusion that the actions of someone other than Russell had caused the Roth car to move. We therefore affirm the trial justice's denial of the motion for a new trial.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

*Leo P. Attilli*, for plaintiffs.

*Eugene V. Higgins*, for defendants.