### Vincent E. PAZIENZA

v.

### Kurt READER et al.

### No. 97–358–A.

Supreme Court of Rhode Island.

July 1, 1998.

Gerald C. DeMaria, Providence.

Lauren E. Jones, Joel K. Gerstenblatt, Providence.

### ORDER

The sudden emergency doctrine is the crux of this automobile-accident case. The plaintiff Vincent E. Pazienza claims the trial justice erred in her instructions to the jury on this subject. Because Pazienza's vehicle had invaded the opposing stream of traffic just moments before the ultimate lane-crossing incident that caused his injuries, Pazienza contends that the other car-driver, defendant Chester W. Ham, Jr. (Ham), should have anticipated that the northbound automobile in which Pazienza was a passenger would yet again cross over into and block the opposite southbound traffic lane that Ham's vehicle was traversing. As a result, Pazienza claims, the trial justice should not have instructed the jury as she did concerning the alleged existence of a sudden emergency, nor should she have denied his motion for a new trial.

We ordered the parties to show cause before a panel of this Court concerning why this appeal should not be decided summarily. After reviewing their legal submissions and hearing oral argument, we conclude that no cause has been shown and that the appeal can be decided at this time.

On November 12, 1991, Pazienza was a passenger in a car driven by his friend, Kurt Reader (Reader). Reader was driving in a northerly direction in the passing lane on Post Road in Warwick at a speed of approximately forty miles per hour (mph). The speed limit was 35 mph. Because of a head injury he had suffered in the collision, Reader professed an inability to recall the specific facts and circumstances surrounding the accident and he testified only through a reading to the jury of his pretrial disposition. However, his signed statement to police officers on the day of the accident indicated what Pazienza later confirmed at trial: namely, that another car on his side of the highway had cut him off, causing him to swerve to avoid hitting the car in front of him. According to witnesses, Reader's car then fishtailed across the highway's dividing line into the opposing stream of traffic. At this moment, Ham was proceeding on the other side of Post Road, driving his vehicle southbound in the inside passing lane. Suddenly he saw Reader's car cross the dividing lane into his lane approximately 400 feet ahead of him. But just as Ham was about to brake his vehicle, Reader's car veered back into the north-bound-passing lane on the other side of the road. With his foot still hovering over the brake pedal, Ham was about to switch it back to the accelerator when Reader's car again shot out into the lane ahead of him and rapidly advanced sideways towards Ham's car. Although Ham slammed on his

brakes, within a matter of second the cars collided. Pazienza was injured in the crash.

Pazienza argues that Ham should have been able to anticipate and avoid the accident because Reader's vehicle had popped out into Ham's lane of travel just moments before it emerged for the second and last time prior to the collision. But since Reader's vehicle had returned to its own lane of travel after it emerged for the first time, we conclude that a reasonable jury could find that Ham had no cause to foresee that Reader's vehicle would suddenly reemerge yet again into his lane of travel. We are persuaded, as was the trial justice, that under these circumstances a jury could find that a sudden emergency still confronted Ham when, for the second time in a matter of seconds, Reader's vehicle darted in front of his car as he was traveling along on the opposite side of the road within the speed limit. Accordingly, we concur with the trial justice that this situation warranted the sudden emergency instruction that she gave.

When, as here, a driver of an automobile is confronted with an unforeseeable emergency condition not caused by his own negligence, a sudden emergency instruction to the jury like the one given in this case is appropriate.[1] *See, e.g., Roth v. Hoxsie's Arco Service, Inc.,* 121 R.I. 428, 432, 399 A.2d 1226, 1228 (1979); *Oddo v. Cardi,* 100 R.I. 578, 581–82, 218 A.2d 373, 375–76 (1966); *see also Lamarque v. Masse,* 76 R.I. 382, 387–88, 71 A.2d 100, 102–03 (1950).

The so-called sudden emergency doctrine is a rule of reason "which recognizes that individuals confronted with sudden and unexpected events demanding immediate action cannot be held to the same standard of care required of one in no such predicament." *Roth,* 121 R.I. at 432, 399 A.2d at 1228. The jury heard scant evidence that Ham had been negligent in any way in the manner in which he had reacted to this situation. Moreover, as the instruction indicated, the foreseeability of this accident was a question for the jury to decide. The trial justice, therefore, correctly charged the jury that "the exigent or emergency nature of the circumstances becomes a factor which you may consider in determining whether that driver did act with ordinary care under the circumstances with which he was faced."

The rear-end collision cases, *see, e.g., Maklar v. Greene,* 106 R.I. 405, 261 A.2d 15 (1970), and child dart-out cases, *see e.g. Kolc v. Maratta,* 108 R.I. 623, 278 A.2d 410 (1971), that are relied upon by Pazienza are distinguishable from this case because there the drivers reasonably could have foreseen what

---

1. In pertinent part, the trial justice instructed the jury as follows:

"Now, this case requires that I also instruct you on something called the sudden emergency doctrine. The sudden emergency doctrine permits a person involved in a collision to be held to a lower standard of care because of the circumstances. Where a driver is confronted by a sudden emergency not caused by that driver's own negligence, then that driver will be held to a lower standard in determining whether his conduct was negligent. If you find that Mr. Ham was confronted with a sudden emergency and that that emergency was not the product of his own negligence, then you may hold him to a lower standard of care in determining whether he acted as a reasonably prudent person would. Certainly, the standard of reasonableness is still applicable; that is, a driver faced with a sudden emergency must act reasonably in considering the emergency circumstance, but the exigent or emergency nature of the circumstances becomes a factor which you may consider in determining whether that driver did act with ordinary care under the circumstances with which he was faced.

"As I said, ordinary care is a relative concept and depending upon the degree of harm posed by the situation, ordinary care will vary with the circumstances. In an emergency situation, the care necessary to constitute ordinary care can be lowered because of the exigencies of the circumstances. This doctrine, though, only applies if Mr. Ham could not reasonably have foreseen the occurrence of the emergency. If you find that Mr. Ham could not reasonably have foreseen the emergency with which he was faced then you may apply this doctrine to him and you may find a lower degree of care constituted ordinary care.

"The law is that the operator of an automobile may in the absence of knowledge to the contrary assume that other drivers on the road will obey the law and will operate their vehicles in the manner required by law. In considering the sudden emergency doctrine, you should consider whether any emergency with which you find Mr. Ham was confronted was foreseeable considering that he may, in the absence of some knowledge to the contrary, assume that other drivers on the road would obey the law in the operation of their vehicles."

ultimately happened to cause the accident and taken steps to prevent it. Here, however, far from ignoring the warning signs of a potential hazard (as the defendant did in *Kolc*), Ham continued to monitor the straying Pazienza vehicle even after it returned to its own lane of travel. And rather than continue driving on as usual, Ham kept his foot poised over the brake pedal for the next few seconds just in case that car's first lane invasion was a mere foretaste of further danger. When Reader's vehicle suddenly departed from its northbound passing lane and entered Ham's opposing travel lane for a second time, however, the distance between the vehicles had narrowed and, through no fault of his own, Ham was unable to take any effective avoidance action.[2] Even Pazienza admitted that the entire series of events "happened pretty fast * * * It was a quick event." Thus, the jury was entitled to conclude that the mere fact that Reader's car had briefly crossed the center line before it emerged yet again into Ham's travel path moments later did not convert its second invasion of the southbound traffic lane into something other than an unforeseeable emergency situation for Ham.

We have carefully examined Pazienza's other claims of error and conclude that they are meritless. Accordingly, for the reasons set forth above, we deny the appeal and affirm the judgment below.

WEISBERGER, C.J., and LEDERBERG, J., did not participate.

---

**2.** Contrary to plaintiff's suggestion that Ham's speed of between thirty and thirty-five miles per hour should be likened to Mrs. Kolc's twenty to twenty-five mile per hour rate of travel in a school zone, the proper factor to be considered

---

in assessing the reasonableness of Ham's reactions is the rate of closure between the two vehicles here, which from the accounts of various witnesses was between seventy-two and eighty-five miles per hour.