[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the motion for additur and/or new trial of Plaintiffs Nelson Ferreira and Angela Ferreira and the motion for new trial of Plaintiffs Morris Maglioli and Andrea Maglioli. Jurisdiction is pursuant to Superior Court Rule of Civil Procedure 59(a)(1).
 FACTS/TRAVEL
The case of Nelson Ferreira (N. Ferreira) and Angela Ferreira (A. Ferreira) against J.P. Noonan Transportation, Inc. (J.P. Noonan) and Kenneth A. Baker (Baker) (collectively Defendants) was consolidated for trial with the case of Morris Maglioli (M. Maglioli) and Andrea Maglioli (A. Maglioli) against the same. Nelson Ferreira, A. Ferreira, M. Maglioli, and A. Maglioli (collectively Plaintiffs) are residents of Rhode Island Baker is an employee of J.P. Noonan, a Massachusetts corporation that does business throughout Rhode Island
Prior to 6:00 a.m. on January 12, 1999, it had been drizzling. At or slightly after 6:00 a.m. on this same day, M. Maglioli was driving A. Maglioli's 1988 Toyota motor vehicle on Route 95 So. in West Greenwich, Rhode Island Nelson Ferreira and Cosimo Spaziano were traveling with M. Maglioli. Baker was also traveling this route in a 1995 Mack truck owned by J.P. Noonan.
Baker was driving in the left lane, and a red pickup truck was traveling in front of him. Other vehicles were traveling beside Baker in the right lane while M. Maglioli and his passengers were traveling behind Baker's truck. Arguably as a result of black ice covering the road, the red pickup truck lost control and began spinning. Baker, either to avoid hitting the red pickup truck and the vehicles in the right lane or because he lost control of his truck, drove his vehicle into the median strip on his left side. The red pickup truck struck the guardrail and came to a stop against the guardrail facing west. Baker's truck then struck the guardrail, sliding back into the highway in a jack-knifed position. Baker's truck came to a rest approximately twenty feet from the red pickup truck, blocking either all of the southbound lanes or all of the left lane and a good portion of the right lane. Morris Maglioli, still traveling in the left lane behind Baker's truck, was unable to stop in time or to move to the right due to traffic in the right lane. Consequently, he drove into the side of the trailer of Baker's truck.
As a result of this incident, both M. Maglioli and N. Ferreira claim they sustained personal injuries and pain and suffering; incurred medical, hospital, and pharmaceutical bills; lost earnings and earning capacity; and lost enjoyment of life. Additionally, A. Maglioli and A. Ferreira allege that as a result of the injuries sustained by their husbands, they were deprived of their husbands' consortium, society, and companionship. Finally, A. Maglioli asserts that as a result of Defendants' negligence, her motor vehicle was damaged and depreciated in value, she lost the use of same, and she incurred charges for towing and storage.
At trial, the jury returned a verdict for Defendants.
 MOTION FOR NEW TRIAL AND/OR ADDITUR
Superior Court Rule of Civil Procedure 59(a)(1) provides that
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues, . . . in an action in which there has been a trial by jury for error of law occurring at the trial or for any other reasons for which new trials have heretofore been granted in actions at law in the courts of this state."
In ruling on a motion for new trial, a trial justice acts as a super juror and must "independently weigh, evaluate, and assess the credibility of the trial witnesses and evidence." Morroccov. Piccardi, 713 A.2d 250, 253 (R.I. 1998). In doing so, the trial justice may "accept some or all of the evidence as having probative force." Barbato v. Epstein, 97 R.I. 191, 193,196 A.2d 836, 837 (1964). Moreover, he or she may reject parts of testimony because it is "impeached or contradicted by other positive testimony or by circumstantial evidence" or "totally at variance with undisputed physical facts or laws," or on account of "inherent improbabilities or contradictions." Id. The trial justice also may add to the evidence by drawing appropriate inferences. Id. at 193-94, 196 A.2d at 837. While the trial justice does not need to perform an exhaustive analysis of the evidence, he or she should refer with some specificity to the facts upon which he or she based the decision so that the reviewing court can determine whether an error was committed.Reccko v. Criss Cadillac Co., Inc., 610 A.2d 542, 545 (R.I. 1992). Furthermore, the trial justice should not substitute his or her conclusions for those of the jury or disturb the jury's findings purely because he or she would have reached a contrary finding on the same evidence. Turgeon v. Davis, 120 R.I. 586, 590, 388 A.2d 1172, 1174 (1978).
If, after performing this evaluation, the trial justice concludes "that the evidence is evenly balanced or is such that reasonable minds, in considering the same evidence, could come to different conclusions," then he or she should let the verdict stand Morrocco, 713 A.2d at 253. If, however, the trial justice determines that the jury's verdict is against the fair preponderance of the evidence or fails to administer substantial justice, he or she must grant the motion for new trial. Soaresv. Ann Hope of R.I., Inc., 637 A.2d 339, 348 (R.I. 1994).
When a motion for a new trial is based on the grounds that the verdict contravenes the law, the only question presented is whether or not the jury accepted and followed the law as given to it by the trial justice in his or her instructions. Sneddon v.Costa, 117 R.I. 624, 627, 369 A.2d 643, 645 (1977). On such an allegation, the verdict should be set aside if it "is contrary to the law as given by the trial justice to the jury." Blume v.Shepard Co., 108 R.I. 683, 690, 278 A.2d 848, 852 (1971).
Additur constitutes a mechanism by which a trial justice may increase a jury's award of damages. 2 Rhode Island Practice Procedure § 1165 at 300 (1996). A trial justice may utilize additur to correct a jury award that "fails to properly respond to the merits of the controversy," "fails to administer substantial justice," or that is based upon an incorrect quantification of a party's comparative fault. Cotrona v.Johnson Wales College, 501 A.2d 728, 733-34 (R.I. 1985).
Although a motion for additur pre-dates the Rules of Civil Procedure, a party may properly bring a motion for additur pursuant to Superior Court Rule of Civil Procedure 59(a)(1).Rhode Island Practice Procedure, supra, at 299-300. Rule 59(a)(1) allows a party to move for a new trial "for any of the reasons for which new trials have heretofore been granted." InRoberts v. Kettelle, 116 R.I. 283, 301-02, 356 A.2d 207, 218 (1976), the court recognized that the language of Rule 59(a)(1) contemplates a motion for additur.
 REAR-END ACCIDENT INSTRUCTION
Plaintiffs contend that this Court committed an error of law in charging the jury with the rear-end accident instruction. In Rhode Island, it is well-settled that a rear-end collision establishes a prima facie case of negligence against the driver of the following car, and that said driver bears the duty of going forward. Nelson v. Grilli, 117 R.I. 538, 540,368 A.2d 1234, 1235 (1977); Rivard v. Plante, 80 R.I. 312, 319-20,96 A.2d 644, 647 (1953). Nevertheless, if the testimony reveals "a conflict of evidence from which different conclusions may reasonably be drawn by ordinarily prudent persons, then the question becomes one of fact for the jury to determine" and the driver of the preceding car retains the burden of proof.Nelson, 117 R.I. at 540, 368 A.2d at 1235.
Articulating the reasoning behind the rear end accident instruction, one court noted that "the party in the vehicle behind has a view of what lies ahead and is therefore in a better position to explain why his vehicle struck the rear of the vehicle ahead." Schlechta v. Poole Truck Lines, Inc.,678 F.2d 59, 62 (8th Cir. 1982). See also Reid v. Courtesy Bus Co.,234 A.D.2d 531, 532 (N.Y. App. Div. 1996) (noting that the following driver bears the burden of rebuttal because he or she "is in a better position to excuse the collision either through a mechanical failure, . . . a sudden stop of the vehicle ahead, . . . an unavoidable skidding on a wet pavement, or any other reasonable cause") (internal quotations omitted). In deciding whether the rear-end doctrine applies to a particular case, "[t]he trial judge must decide as a matter of law whether the circumstances as shown by the evidence most favorable to the proponent of the rear-end instruction would permit the jury to draw an inference of negligence without proof of what action or omission comprised the negligence by the driver of the following vehicle." Schlechta, 678 F.2d at 62; Curtis v. Hografe,784 S.W.2d 900, 902 (Mo. Ct. App. 1990).
This Court finds that the accident in the case at bar did not constitute a rear-end collision. The evidence presented at trial establishes that the car driven by M. Maglioli struck the side of the trailer of the J.P. Noonan truck, not the rear. This Court further finds that its instructions made it twice as burdensome for Plaintiffs to prove their case. This Court first instructed the jury that Plaintiffs had to produce evidence to rebut the rear-end doctrine presumption, which established a prima facie case of negligence against M. Maglioli. The Court then also charged the jury to consider whether M. Maglioli was comparatively negligent. Therefore, M. Maglioli's driving was twice subject to scrutiny. Finding that it erred in instructing the jury on the rear-end doctrine presumption in light of the evidence presented at trial and in charging the jury as to the rear-end doctrine in concert with comparative negligence, and that such errors were prejudicial, this Court grants Plaintiffs' motion for new trial.[1]
 SUDDEN EMERGENCY INSTRUCTION
Plaintiffs further argue that this Court committed an error of law in instructing the jury on the sudden emergency doctrine. The sudden emergency doctrine acknowledges that "individuals confronted with sudden and unexpected events demanding immediate action cannot be held to the same standard of care required of one in no such predicament." Pazienza v. Reader, 717 A.2d 644, 645 (R.I. 1998). Pursuant to the doctrine, the "standard of reasonableness is still applicable, [but] the exigent situation is one factor to be considered in evaluating the actor's conduct," Roth v. Hoxie's Arco Service, Inc., 121 R.I. 428, 432, 399 A.2d 1226, 1228 (1979), and in ascertaining the precise level of reasonableness. Malinowski v. United Parcel Service,Inc., 727 A.2d 194, 196 (R.I. 1999).
A trial justice must administer a requested jury charge when it is "applicable to facts adduced in evidence." Roth, 121 R.I. at 432, 399 A.2d at 1228. It is appropriate for a trial justice to administer the sudden emergency instruction when "a driver of an automobile is confronted with an unforeseeable emergency condition not caused by his own negligence." Pazienza, 717 A.2d at 645. Therefore, "[t]he doctrine does not apply if a defendant may be reasonably charged with foreseeing the occurrence of an emergency condition." Maklar v. Greene, 106 R.I. 405, 408,261 A.2d 15, 17 (1970). Additionally, the sudden emergency doctrine "is unavailable when the emergency is created by the actor's own negligence, for to permit benefit from the emergency to be claimed by one responsible for its creation would provide him with a shield fabricated out of his own fault." Mercurio v.Fascitelli, 116 R.I. 237, 241, 354 A.2d 736, 739 (1976).
The Rhode Island Supreme Court has held that a sudden emergency existed, for example, when an individual was driving a truck down a hill and around a curve and an oncoming car drove into the truck's lane. Lamarque v. Masse, 76 R.I. 382, 386-86,71 A.2d 100, 102 (1950). Additionally, a sudden emergency instruction was appropriate where plaintiff's vehicle fishtailed into defendant's lane two times because after plaintiff's vehicle had returned to its own lane after fishtailing once, "a reasonable jury could find that . . . [defendant] had no cause to foresee that . . . [plaintiff's vehicle] would suddenly reemerge yet again into his lane of travel." Pazienza, 717 A.2d at 645.
The Rhode Island Supreme Court has refused to find a sudden emergency, however, when the situation was foreseeable. For instance, a sudden emergency did not exist when defendant car operator observed a crossing guard supervising children about 200 feet away, but then failed to look again to the left before a child ran into the side of her car. Kolc v. Maratta,108 R.I. 623, 626-27, 278 A.2d 410, 411-12 (1971). In reaching this decision, the court reasoned that the likelihood of a child darting across the street was foreseeable. Id. at 627, 278 A.2d at 412. Similarly, reasoning that the defendant was not presented with a reasonably unforeseeable condition of sudden emergency, the Rhode Island Supreme Court held that the trial justice correctly refused to instruct as to the sudden emergency doctrine when defendant rear-ended plaintiff's vehicle after plaintiff stopped to avoid hitting a vehicle which stopped abruptly in front of it. Maklar, 106 R.I. at 408, 261 A.2d at 17-18.
Furthermore, in a number of cases, the Rhode Island Supreme Court has held the sudden emergency doctrine to be inapplicable, reasoning that the factual situations lacked spontaneity. For example, in Markham v. Cross Transp., Inc., the court held that the sudden emergency instruction was not warranted when on a rainy night, defendant truck driver saw and then struck stopped vehicles that were visible on the highway because "the spontaneity required in Lamarque was not present."119 R.I. 213, 226, 376 A.2d 1359, 1366 (1977). Instead, the trial justice instructed the jury as to reasonable and prudent speeds and conditions requiring reduced speed. Id. Likewise, the court's charging the jury as to the sudden emergency instruction was erroneous when prior to striking a boy who was pushed into the roadway, a truck driver observed a few boys playing from about 300 feet away, slowed the tractor-trailer, sounded the vehicle's horn, attempted to make eye contact with the boys, and would have changed lanes had traffic allowed. Malinowski, 727 A.2d at 197-98. The court found that the situation "lacked the spontaneity required to be termed a `sudden emergency.'" Id. at 198.
This Court finds that the instant facts adduced in evidence did not warrant a sudden emergency instruction. More specifically, this Court finds that the road conditions in the case at bar did not amount to a sudden emergency. Baker's testimony that the road conditions did not affect his driving ability, that he was able to control his vehicle, and that his vehicle was performing as he intended it to perform contravenes any argument that, to Baker, the weather constituted a sudden emergency. Furthermore, the spinning red pickup truck likewise fails to constitute a sudden emergency. The evidence produced at trial demonstrates that Baker saw the red pickup truck spinning about 360 feet ahead of him, and that as he approached the red pickup truck, he downshifted two times. This situation lacks the spontaneity that an application of the sudden emergency instruction requires. Similar to the defendant in Markham who saw the stopped vehicles ahead of time, Baker saw the spinning red pickup truck as he approached it. Moreover, just as the defendant in Malinowski engaged in certain preparatory behaviors that negated the spontaneity of the situation, Baker engaged in the preparatory behavior of downshifting and steering his truck towards the median. Finding that the trial justice erred in instructing the jury as to the sudden emergency doctrine, this Court grants Plaintiffs' motion for new trial.[2]
 REVIEW OF THE EVIDENCE
In addition to taking exception to the trial justice's instructions concerning the rear-end and sudden emergency doctrines, Plaintiffs assert that this Court's verdict is against the evidence, and fails to respond to the merits of the controversy or administer substantial justice. In particular, Plaintiffs direct this Court's attention to conflicts between the testimony of Baker and Mr. Almeida, a defense witness. Specifically, Mr. Alemeida and Baker disagree upon how many times the red pickup truck spun around and where they were standing when M. Maglioli drove into the truck's trailer. Plaintiffs further emphasize that while Baker has reason to be biased, as he still works for J.P. Noonan, Mr. Almeida is a disinterested witness. Finally, Plaintiffs argue that no evidence exists that M. Maglioli passed a line of cars on the right side of the highway.
This Court finds that reasonable minds, in considering this same evidence, could reach different conclusions. Accordingly, the Court declines to grant Plaintiff's motion for new trial on the grounds that the verdict is against the evidence and fails to respond to the merits of the controversy or administer substantial justice.
 CONCLUSION
After reviewing the evidence before it, and considering the credibility of the witnesses, this Court finds errors of law warranting a new trial. Accordingly, this Court grants Plaintiffs' motion for new trial.
[1] Plaintiffs also argue that the jury reasonably could have understood the trial justice's rear-end accident instruction to mean that the Court had decided that the accident at issue constituted a rear-end accident. As the Court has determined that a new trial is warranted on other grounds, it need not address this argument.
[2] Plaintiffs also argue that Defendants waived the sudden emergency defense and that in light of the rulings of other jurisdictions, Rhode Island courts should cease applying the sudden emergency doctrine to automobile accident cases. Having determined that the trial justice erred in charging the jury as to the sudden emergency doctrine, Plaintiffs' arguments concerning waiver and its good faith argument for a change in the law need not be addressed.