Linda CRUZ

v.

Al JOHNSON et al.

No. 2002–450–Appeal.

Supreme Court of Rhode Island.

June 10, 2003.

Charles D. Wick, Providence, for plaintiff.

CharCretia V. DiBartolo, for defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendants, Alcovia Johnson (Johnson), the Stop & Shop Supermarket Company, and Stop & Shop Companies, Inc. (Stop & Shop) (collectively referred to as defendants), appeal a Superior Court order granting plaintiff Linda Cruz's (plaintiff or Cruz) motion for new trial, alleging that the trial justice improperly instructed the jury on the shopkeeper's privilege statute, G.L.1956 § 11–41–21(c) and that the verdict was against the weight of the evidence. This case came before the Supreme Court for oral argument on May 12, 2003, following an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Having reviewed the record and the parties' briefs, and having considered the oral arguments, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. For the reasons indicated below, we affirm the Superior Court's order for a new trial.

### I

### Facts and Travel

On August 17, 1998, plaintiff and Kristina Evans (Evans) went together to the Stop & Shop grocery store (store) on Beverage Hill Avenue in Pawtucket. The two were merely acquaintances; Evans was plaintiff's brother's girlfriend. They were shopping together to prepare dinner that evening. Before their grocery shopping trip, the two stopped briefly at the Dollar Store so that Evans could purchase a pair of rubber gloves, but she could not find any in that store. The plaintiff testified that she knew that Evans wanted to buy "some gloves." Upon their arrival at Stop & Shop, the two separated to tend to their individual shopping needs. When the two reunited, plaintiff was carrying groceries and Evans had a box of rubber gloves in one hand and a pair of gloves in the other. The surveillance video depicts Evans stuffing the pair of gloves that she was carrying into her shirt pocket. The plaintiff, walking slightly ahead of Evans, appeared to be unaware of Evans's actions. The two proceeded to the checkout line, where Evans handed plaintiff the box of gloves and asked her to return them to the shelf. The plaintiff complied and returned the box of gloves to a random shelf in the store. At trial, plaintiff testified that she did not know that Evans had taken the pair of gloves until after Johnson, a store security officer, approached the two as they were leaving the store.

According to plaintiff and Evans, Johnson shouted to plaintiff "turn around, you know what you did." At this point, plaintiff was walking ahead of Evans. Johnson, dressed in plainclothes, did not approach Evans. The plaintiff testified that she demanded to know who the plainclothed, unidentified man was that approached her in a loud and harassing manner. She alleged that he responded in a louder tone, "Turn around!" She asserts that as she attempted to pass Johnson he grabbed her arm. She struggled, attempting to break free, and at the same time continued to ask what was going on. The altercation escalated and after plaintiff broke free from the headlock that Johnson had her in, she ran outside, only to be accosted once again by Johnson and pushed back inside. The plaintiff testified that Johnson's unexplained actions horrified and shocked her.

Johnson, however, had a different recollection of the events. He testified that upon encountering plaintiff and Evans, he immediately identified himself and said that he had to speak to Evans. He explained that Evans responded that she didn't know what he was talking about, and plaintiff exclaimed, "What is he talking about? We are not going back." The plaintiff, he testified, began pushing toward the exit with Evans and he blocked the door. He then alleged that plaintiff assaulted him as she tried to push her way out. Eventually, the store manager told plaintiff to leave the store.

While plaintiff went outside to use the pay phone to call the police, the manager took Evans upstairs to question her. The plaintiff testified that, upon her return, she learned about the shoplifted gloves for the first time and offered to pay for them. The manager said "no, she's going to jail." The plaintiff waited for the police to arrive so that she could lodge a complaint against Johnson.

When the police arrived, plaintiff asked to make a report but the officers stated that they were there for another reason. After a private conversation with management, they arrested Evans for shoplifting and plaintiff for assault. The police never took a report from plaintiff. In handcuffs, plaintiff was brought to Pawtucket police headquarters.

The plaintiff eventually was acquitted of the assault charge. Subsequently, she brought the instant suit against defendants for slander, assault, false arrest, false imprisonment and intentional infliction of emotional distress. In response to plaintiff's claim of false imprisonment, defendants asserted a right to detain plaintiff under the shopkeeper's privilege. At trial, the trial justice issued a jury instruction on the shopkeeper's privilege. The jury re-turned a verdict in favor of defendants on all claims.

Eight days later, plaintiff filed a motion for a new trial. The plaintiff asserted that the verdict was against the weight of the evidence and asked the trial justice to exercise his duty as the thirteenth juror and grant the motion. In conducting his analysis, the trial justice raised, *sua sponte,* the issue of whether it was proper to charge the jury on the shopkeeper's privilege. He said "[s]ince Linda Cruz was not shoplifting, why would the [c]ourt why did the [c]ourt give that instruction, unless the [c]ourt committed error." He also said that defendants failed to produce evidence that Johnson believed that plaintiff shoplifted. The trial justice then granted the motion for a new trial, finding that "the [c]ourt committed an error of law" and that the "interests of justice were not served." The defendants timely appealed.

## II

### New Trial

The defendants assert that the trial justice made two errors in granting the motion for a new trial. First, defendants argue that the trial justice's jury instruction on the shopkeeper's privilege was not erroneous. Second, defendants contend that the trial justice improperly exercised his role as "superjuror" in finding that the verdict did not serve the interests of justice. We disagree.

■ Pursuant to the 1995 amendment to Rule 59(a)(1) of the Superior Court Rules of Civil Procedure, a trial justice may grant a new trial "for error of law occurring at the trial." This Court reviews those decisions *de novo. Votolato v. Merandi,* 747 A.2d 455, 460 (R.I.2000). Because the trial justice grounded his grant of a new trial in part on the sup-

posed erroneous jury instruction, we review the record and jury instructions to determine whether the instruction was erroneous.

Section 11–41–21, also known as the shopkeeper's privilege statute, grants merchants and their agents the right to temporarily detain a person suspected of shoplifting. The relevant portion of § 11–41–21(b) provides:

"Any merchant who *observes any person concealing or attempting to conceal* merchandise on his person or amongst his or her belongings or upon the person or amongst the belongings of another, transporting merchandise beyond the area within the retail mercantile establishment where payment for it is to be made without making payment for it, removing or altering price tags on merchandise, or switching the containers of merchandise may stop the person. Immediately upon stopping the person, the merchant shall identify himself or herself and state his or her reason for stopping the person. If after his or her initial confrontation with the person under suspicion, the merchant has reasonable grounds to believe that at the time stopped the person was committing or attempting to commit the crime of shoplifting on the premises, the merchant may detain the person for a reasonable time * * *." (Emphasis added.)

Although plaintiff duly objected to this instruction, which was consistent with what Stop & Shop suggested, the trial justice issued the following jury instruction based on the shopkeeper's privilege statute:

"Under the law in Rhode Island, if an individual is believed to have committed the crime of shoplifting, a merchant may detain the person for a reasonable time sufficient to summons a police officer to the premises. And for the purposes of this definition, I will be discussing a concept known as reasonable ground. And reasonable ground includes knowledge that a person has concealed unpurchased merchandise belonging to the establishment while on the premises of the establishment, and that that person is leaving the premises with unpurchased, concealed merchandise in that person's possession * * *."

"Immediately upon stopping the person, the merchant or the merchant's agent shall identify themselves and state his or her reason for stopping the person. If after the initial confrontation with the person under suspicion, the merchant has reasonable grounds to believe that at the time stopped the person was committing or attempting to commit the crime of shoplifting on the premises, the merchant may detain the person for a reasonable time sufficient to summon a police officer to the premises * * *."

"In detaining a person whom the merchant has reasonable grounds to believe is committing the crime of shoplifting, the merchant may use a reasonable amount of non-deadly force when and only when the force is necessary to protect himself or herself, or to prevent the escape of the person being detained, or the loss of property."

The trial justice, upon further reflection after the trial, determined that this instruction constituted error. He explained that because plaintiff never was actually charged with shoplifting and because Johnson never believed that she shoplifted, the instruction on the statutory privilege was erroneous, and he granted a new trial.

 We conclude that the trial justice properly determined that he committed an error of law when he instructed the jury on the shopkeeper's privilege. However, we disagree with his reasoning and focus instead on the language of the statute.

The privilege to detain suspected shoplifters exists only if, as the statute indi-

cates, a merchant or its agent "observes any person concealing or attempting to conceal merchandise on his person or amongst his or her belongings or upon the person or amongst the belongings of another * * *." Section 11–41–21(b). We do not agree that plaintiff need be charged with shoplifting for a merchant to be protected under the privilege. Furthermore, a merchant's belief about plaintiff's involvement is irrelevant because the statute first requires an observation.

Johnson only observed Evans concealing merchandise. At no time did he observe plaintiff engaging in any activity that would grant defendants the privilege to detain plaintiff along with Evans under the statute.

Had the law been as the trial justice instructed, "if an individual is *believed* to have committed the crime of shoplifting, a merchant may detain the person for a reasonable time," then the instruction would have been warranted. (Emphasis added.). Although it is the common law rule,[1] *see* W. Page Keaton et al., *Prosser*

*and Keaton on the Law of Torts* § 22 at 141 (5th ed.1984), as well as the rule in many other jurisdictions,[2] this is not the codified rule in Rhode Island. The shopkeeper's privilege statute clearly requires that the merchant "observe" the shoplifting, not merely believe that it occurred.[3] Because Johnson never saw plaintiff shoplift, the trial justice properly ruled that he should not have issued a jury instruction on the shopkeeper's privilege statute.

We need not reach the defendant's second argument because we have determined that the trial justice properly granted a new trial based on the erroneous jury instruction.

Accordingly, we deny and dismiss the defendants' appeal and affirm the order of the trial justice for a new trial. The papers of the case may be returned to the Superior Court.

Justice FLAHERTY did not participate.

1. Prosser explains that "a shopkeeper, who has good reason to believe that he has caught a customer in the act of stealing * * * is placed in a difficult position;" he must either absorb the cost of stolen merchandise or detain the customer and risk liability for false imprisonment. W. Page Keaton et al., *Prosser and Keaton on the Law of Torts* § 22 at 141 (5th ed.1984). As a result, under the common law, courts began to grant merchants a limited privilege to briefly detain the customer reasonably suspected of stealing to investigate. *Id.* at 142. The Restatement (Second) *Torts* later adopted this rule. *See* Restatement (Second) *Torts* § 120A (1965) (stating "[o]ne who reasonably believes that another has tortiously taken a chattel upon his premises, or has failed to make due cash payment for a chattel purchased or services rendered there, is privileged, without arresting the other, to detain him on the premises for the time nec-

essary for a reasonable investigation of the facts").

2. Many jurisdictions require only that the merchant have reasonable grounds to believe that the suspect has shoplifted. *See, e.g., Coblyn v. Kennedy's, Inc.,* 359 Mass. 319, 268 N.E.2d 860, 862–64 (1971); *Lukas v. J.C. Penney Co.,* 233 Or. 345, 378 P.2d 717, 724 (1963) (defining reasonable grounds as having virtually the same meaning as probable cause and requiring the application of the objective reasonable prudent person standard).

3. We note, however, that as a result of the Legislature's adaptation of the common law to statutory law requiring an observation, the statute offers a limited protection to merchants. Thus, the statutory privilege essentially puts merchants, in many cases, in the same difficult position described by Prosser. *See* W. Page Keaton et al., § 22 at 142.