Morris MAGLIOLI et al.

v.

J.P. NOONAN TRANSPORTATION, INC., et al.

Nelson Ferreira et al.

v.

J.P. Noonan Transportation, Inc., et al.

No. 2004–136–Appeal.

Supreme Court of Rhode Island.

March 16, 2005.

Michael Kiselica, Warwick, for Plaintiffs.

Brian T. Dougan, Burlington, MA, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on February 2, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. The defendants, J.P. Noonan Transportation, Inc. (J.P. Noonan) and Kenneth A. Baker (Baker, defendant-driver, or, collectively, defendants), appeal from the trial justice's grant of a new trial after a jury verdict in favor of the defendants.

### Facts and Travel

The Magliolis[1] and the Ferreiras[2] (collectively plaintiffs) retained separate counsel and filed separate complaints seeking damages arising from an automobile collision with a tractor-trailer owned by J.P. Noonan. The plaintiffs' lawsuits were consolidated for trial in Superior Court.

At trial, Baker, a truck driver employed by J.P. Noonan, testified that, in the early morning of January 12, 1999, he was driving south on Interstate 95 (Route 95). Baker was en route to deliver a load of soda ash from Mansfield, Massachusetts, to Groton, Connecticut. Baker testified that, before the collision, a light rain began and persisted throughout the events culminating in the accident. He testified that he was driving fifty miles per hour in the left lane when he observed a pickup truck spinning out of control approximately 360 feet ahead of him. Baker believed that road conditions would prevent him from coming to a full stop, so he downshifted to reduce his speed and drove off the road onto the grassy median. The tractor-trailer slid across the grass, struck a guardrail, jackknifed,[3] and slid back onto Route 95. Baker reported that, although his vehicle did not make contact with the pickup truck, the tractor-trailer blocked the entire

1. Morris Maglioli (Morris) and Andrea Maglioli (Andrea), for themselves and as the parents and natural guardians of Talia Maglioli (Talia), a minor, are the members of the Maglioli family involved in this case. Count 1 of their complaint alleged Baker's negligence, which was imputed to his employer, J.P. Noonan; count 2 alleged that J.P. Noonan negligently entrusted Baker with the tractor-trailer; count 3 was a loss of consortium claim by Andrea, Morris's wife; count 4 was a loss of society and companionship claim asserted by Morris and Andrea, on behalf of their minor child Talia.

2. Nelson Ferreira (Nelson) and Angela Ferreira (Angela), for themselves and as parents

and natural guardians of Devin Ferreira (Devin), a minor, are the members of the Ferreira family involved in this case. Count 1 of their complaint alleged Baker's negligence, which was imputed to J.P. Noonan; count 2 alleged negligent entrustment; count 3 was a loss of consortium claim by Angela, Nelson's wife; count 4 was a loss of society and companionship claim asserted by Nelson and Angela, on behalf of their minor child Devin.

3. The term "jackknife," in reference to a tractor-trailer, is defined as "to have the cab and trailer swivel at the linkage until they form a V shape, as the result of an abrupt stop or accident." Random House Unabridged Dictionary 1020 (2d ed. 1993).

left lane and a portion of the right lane of the highway and came to rest with its right rear wheels lifted off the ground. He estimated that he had only five to eight seconds in which to react to the spinning pickup truck.

According to Baker, he exited the cab of his vehicle to speak with the driver of the pickup truck, Agostina Almeida (Almeida), to inspect his own vehicle, and to find his reflectors.[4] Baker recalled that he was walking alongside the tractor-trailer when Almeida alerted him to an oncoming vehicle; that vehicle then struck the tractor-trailer.

Morris Maglioli (Morris), the driver of the Maglioli automobile was traveling with two passengers, Cosimo Spaziano and Nelson Ferreira (Nelson), on the morning of the accident. According to Morris, it was raining, but he believed that the road conditions were "fine." He recalled driving in the left lane behind Baker's tractor-trailer. He saw the tractor-trailer drive off the highway and strike a guardrail, which caused the tractor-trailer to be pushed back onto the highway, resting "perpendicular" to the left lane. According to Morris, he applied his brakes but was unable to avoid striking the undercarriage of the trailer. Morris testified that traffic in the right lane prevented him from swerving to the right to avoid the collision.

In her charge to the jury, the trial justice included a rear-end collision instruction and a sudden emergency instruction and explained the law of comparative negligence. The plaintiffs objected to both the rear-end collision instruction and the sudden emergency instruction. The jury returned a verdict for defendants, and plaintiffs filed separate motions for a new trial.

The plaintiffs contended that a new trial was warranted on two grounds: the rear-end collision instruction prejudiced their case because the Maglioli vehicle struck the side of the tractor-trailer, not its rear end; and the sudden emergency instruction was improper because Baker had ample opportunity to react to the spinning pickup truck.

The trial justice agreed with plaintiffs and found that the facts did not warrant a rear-end collision instruction because the car driven by Morris struck the side of the tractor-trailer. She concluded that charging the jury with the rear-end collision instruction constituted prejudicial error because defendants were subjected to double "scrutiny" when the jury was also instructed on the law of comparative negligence. The trial justice assigned error as well to the sudden emergency instruction, concluding that road conditions did not create a sudden emergency and that Baker's reactions were not sufficiently spontaneous. The defendants timely appealed from the order of the Superior Court.

## Issues Presented

On appeal, defendants argue that the trial court's grant of a new trial was an abuse of discretion. The defendants assert that the facts of this case warranted the rear-end collision instruction and the sudden emergency instruction. They also contend that if the instructions were erroneously given, the error was harmless.

## Standard of Review

■ In a civil case, pursuant to Rule 59(a)(1) of the Superior Court Rules of Civil Procedure, a trial justice may grant a new trial based on an erroneous jury instruction. *Cruz v. Johnson*, 823 A.2d 1157, 1159–61 (R.I.2003). Because the new trial ordered in this case was based on a per-

---

4.  We surmise that Baker planned to use the   reflectors to warn approaching traffic.

ceived error of law, we review the trial justice's decision to grant a new trial *de novo*. *Id.* at 1159. When a trial justice grants a new trial based on a finding that the jury was charged with an erroneous instruction, "we review the record and jury instructions to determine whether the instruction was erroneous." *Id.* at 1160.

Pursuant to G.L.1956 § 8–2–38, a trial justice is required "to instruct the jury on the law to be applied to the issues raised by the parties."[5] *Malinowski v. United Parcel Service, Inc.*, 792 A.2d 50, 55 (R.I.2002) (*Malinowski II*) (quoting *State v. Briggs*, 787 A.2d 479, 486 (R.I. 2001)). The trial court is obligated to instruct the jury on the law with " 'precision and clarity.' " *Baccari v. Donat*, 741 A.2d 262, 264 (R.I.1999). "In reviewing a trial justice's charge to a jury, this Court examines the charge 'as a whole in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them.' " *Id.* (quoting *Neri v. Nationwide Mutual Fire Insurance Co.*, 719 A.2d 1150, 1153 (R.I.1998)). We review the challenged jury instruction in light of the entire charge delivered by the trial court. *Contois v. Town of West War-*

*wick*, 865 A.2d 1019, 1022 (R.I.2004). It is well settled that "[a]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Id.* (quoting *Montecalvo v. Mandarelli*, 682 A.2d 918, 922 (R.I.1996)).

## Discussion

When a case includes a claim or defense resulting from a rear-end collision between vehicles, a *prima facie* case of negligence against the driver of the car in the rear is established, and the duty of going forward to rebut the *prima facie* showing of negligence rests with that party. *Nelson v. Grilli*, 117 R.I. 538, 540, 368 A.2d 1234, 1235 (1977). If the driver in the rear presents evidence from which reasonable minds could draw different conclusions on the question of negligence, the determination of that issue is left to the finder of fact, and in that instance, the rear-ended driver retains the burden of proof on all issues. *Id.*

After charging the jury with the rear-end collision instruction,[6] the trial justice later concluded that the accident was not a rear-end collision because "[t]he evidence

---

5. General Laws 1956 § 8–2–38 provides:

"**Instructions to jury.**—In every case, civil and criminal, tried in the [S]uperior [C]ourt with a jury, the justice presiding shall instruct the jury in the law relating to the action, and may sum up the evidence therein to the jury whenever he or she may deem it advisable so to do; but any material misstatement of the testimony by him or her may be excepted to by the party aggrieved."

6. On the issue of a rear-end collision, the trial justice instructed the jury as follows:

"There is some evidence that this collision was a rear-end collision. The fact that the collision was a rear-end collision establishes what the law terms a prima facie case of negligence against the driver of the

vehicle doing the rear-ending, unless he's satisfied you that he was not negligent or that reasonable minds might differ as to his negligence.

"Therefore, in the case of a rear-end collision, the law requires you to assume that the driver was negligent in the operation of the vehicle. This does not mean, however, that the driver of the motor vehicle[,] which is following or approaching another from behind[,] is to be held liable under all conditions no matter what the circumstances.

"If the driver of a vehicle colliding with another from behind comes forward with conflicting evidence[,] from which different conclusions as to his negligence may reasonably be drawn or which establishes that he was not negligent, then the presumption that the driver was negligent becomes inoperable and has no further effect."

presented at trial establishes that the car driven by M[orris] Maglioli struck the *side* of the trailer of the J.P. Noonan truck, not the rear."

■ We agree with the trial justice that it was error to charge the jury with a rear-end collision instruction based on the facts adduced at trial. By name and in application, a "rear-end collision" occurs when a vehicle is struck by another vehicle from behind on the lead vehicle's rear end; this generally results from a collision at a red light, a traffic stop at an intersection, or a multi-vehicle car pileup. *See, e.g., DeBlois v. Ashcraft,* 797 A.2d 1073, 1074 (R.I.2002) (mem.). It is undisputed that the tractor-trailer came to a stop perpendicular to the roadway, blocking the lane of travel, and was struck from the side, causing Morris's vehicle to collide with the undercarriage of the trailer.

■ We are satisfied that this accident was not a rear-end collision for which Morris could be found to be *prima facie* negligent. But we are also convinced that this error was harmless and did not warrant a new trial.[7] A rear-end collision instruction generally is given when the driver of the vehicle rear-ended in the accident seeks damages against the driver who struck the claimant from behind. *See, e.g., DeBlois,* 797 A.2d at 1074; *Nelson,* 117 R.I. at 539–40, 368 A.2d at 1235. In this case, the

rear-end collision instruction served to establish a *prima facie* case of Morris's negligence when damages were sought from Baker, the driver of the vehicle that was blocking the roadway. Although the instruction was erroneous, the trial justice also correctly charged that if there was "conflicting evidence[,] from which different conclusions as to [Morris's] negligence may reasonably be drawn or which establishes that [Morris] was not negligent, then the presumption that [Morris] was negligent becomes inoperable and has no further effect." Our careful review of the record discloses that plaintiffs presented sufficient evidence to overcome the rebuttable presumption created by the rear-end collision instruction. We are satisfied that the error was harmless because it was not so far removed from the facts that it prejudiced plaintiffs' case. *See Contois,* 865 A.2d at 1028 (holding that, although there was no evidence supporting an instruction on intervening cause, instructing the jury on intervening cause amounted to harmless error because the instruction "was not so far removed from the facts as to constitute reversible error").

### Sudden Emergency Doctrine

■ The trial justice also found that the facts did not warrant the sudden emergency instruction.[8] In recognition

---

7. We note that, if a rear-end collision instruction had been warranted by the facts, the trial justice adequately instructed the jury on the law pertaining to rear-end collisions. *See Contois v. Town of West Warwick,* 865 A.2d 1019, 1022 (R.I.2004) (stating that jury instructions "need only 'adequately cover[] the law'"); *Galusha v. Carlson,* 120 R.I. 204, 207, 386 A.2d 634, 636 (1978) (setting forth elements of a rear-end collision instruction and respective burdens of proof); *Nelson v. Grilli,* 117 R.I. 538, 540, 368 A.2d 1234, 1235 (1977) (explaining the operation of burdens of proof in a claim seeking damages resulting from a rear-end collision).

8. On the sudden emergency doctrine, the trial justice instructed the jury as follows:
    "A sudden emergency is a situation or circumstance which calls for immediate action. A sudden emergency is a situation that could not have been anticipated by an ordinarily careful person. When a person is faced with a sudden emergency not brought about by his own conduct and the person is required by the emergency to act without sufficient time to determine the best course of action, the operator is not held to the same standard of judgment as would be required if he or she had time to deliberate.

that "individuals confronted with sudden and unexpected events demanding immediate action cannot be held to the same standard of care required of one in no such predicament," the sudden emergency doctrine requires that the jury apply a standard of reasonableness that considers the "exigent situation" when evaluating a party's conduct. *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 289 (R.I.1999) (quoting *Roth v. Hoxsie's Arco Service, Inc.*, 121 R.I. 428, 432, 399 A.2d 1226, 1228 (1979)).

In passing upon the motion for a new trial, the trial justice determined that the road conditions did not entitle defendants to this instruction because Baker was able to control the tractor-trailer. Moreover, the trial justice concluded that the spinning pickup truck did not constitute a sudden emergency:

"The evidence produced at trial demonstrates that Baker saw the red pickup truck spinning about 360 feet ahead of him, and that as he approached the red pickup truck, he downshifted two times. This situation lacks the spontaneity that an application of the sudden emergency instruction requires. * * * Baker saw the spinning red pickup truck as he approached it. Moreover, just as the defendant in *Malinowski* engaged in certain preparatory behaviors that negated the spontaneity of the situation, Baker engaged in the preparatory behavior of downshifting and steering his truck towards the median."

In *Malinowski*, a tractor-trailer driver, while traveling at a speed of fifteen miles per hour, observed a group of boys " 'horsing around' at a distance of approximately 300 feet." *Malinowski v. United Parcel Service, Inc.*, 727 A.2d 194, 195 (R.I.1999) (*Malinowski I*). The driver slowed down his truck, sounded the horn, and attempted to make eye contact with the boys. *Id.* Because of traffic in the left lane, the tractor-trailer driver traveled in the lane nearest to the boys, and when one boy lost his balance, he fell under the tractor-trailer and was crushed under its wheels. *Id.* We concluded that it was error to charge the jury with the sudden emergency instruction because the tractor-trailer driver was "confronted with a situation that lacked the spontaneity required to be termed a 'sudden emergency.' " *Id.* at 197. Under the principle that the sudden emergency doctrine does not apply when the party anticipates the occurrence of an emergency condition, we noted that, when the driver observed the boys from a distance, his decision to slow down and sound the horn demonstrated that he perceived the danger of driving past them. *Id.* at 197–98.

The situation confronting Baker is distinguishable from the facts of *Malinowski I*. The pickup truck was already spinning out of control when Baker began to slow down, and he had only seconds to react to the emergency. Although Baker was able to respond to the situation by downshifting gears and swerving off the road, thereby avoiding a collision with the pickup truck, the mere ability to react does not negate the situation's spontaneity, nor does it necessarily lead to the conclusion that he anticipated the emergency. Unlike *Malinow-*

"When a person is faced with a sudden emergency, he must act reasonably in considering the emergency circumstances, but the emergency nature of the circumstances becomes a factor which you may consider in determining whether the operator acted with ordinary care under the circumstances confronting him at the time.

"A person can claim a sudden emergency existed only if you find that the operator could not have reasonably foreseen the occurrence of the emergency. A person whose own negligence created or contributed to the emergency cannot say it was a sudden emergency."

*ski I*, in which the driver was confronted with children playing near the roadway, there was no evidence suggesting that the pickup truck suddenly would spin out of control. Whether Baker was confronted by a sudden emergency under these facts is a jury question. A sudden emergency instruction was warranted in light of the evidence produced—a tractor-trailer traveling fifty miles per hour that encounters another vehicle approximately 360 feet ahead spinning out of control—speaks to spontaneity. Evidence about Bakers decision to downshift gears and steer his tractor-trailer toward the median could be found by a fact-finder to be a spontaneous reaction to an unforeseen emergency, particularly when the tractor-trailer jackknifed and ended up across the lane of travel.

Furthermore, the facts of this case are distinguishable from *Markham v. Cross Transportation, Inc.*, 119 R.I. 213, 376 A.2d 1359 (1977). In *Markham*, a tractor-trailer driver, after traveling over the crest of a hill, observed vehicles already stopped and blocking a portion of Route 95 but was unable to stop in time to avoid a collision. *Id.* at 225, 376 A.2d at 1366. We affirmed the trial justice's refusal to charge the jury with the sudden emergency doctrine and the trial justices decision to charge the jury with statutory standards bearing on the issue of defendants' negligence. *Id.* at 226, 376 A.2d at 1366. "[W]here [a tractor-trailer driver] saw and struck *stopped* vehicles that were visible on the highway," we concluded that charging the jury with the statutory standard of care, instead of the sudden emergency instruction, was appropriate considering the trial court's finding that the situation lacked spontaneity. *Id.*

In the case before us, a jury could find that a vehicle suddenly spinning out of control immediately ahead of defendant-driver created a spontaneous reaction not necessarily present when vehicles are stopped in the road ahead of a driver who is able to see the stopped vehicles *before* the collision.

Based upon our *de novo* review, we conclude that the rear-end collision instruction amounted to harmless error and that the sudden emergency jury instruction was correctly given. Therefore, we are satisfied that the trial justice erred in granting the motion for new trial. *See Lieberman v. Bliss–Doris Realty Associates, L.P.*, 819 A.2d 666, 673 (R.I.2003) (holding new trial should not have been granted because jury was properly instructed).

### Conclusion

We vacate the order of the Superior Court granting a new trial and remand the case to the Superior Court with directions to enter judgment in favor of the defendants, J.P. Noonan Transportation, Inc. and Kenneth A. Baker.